UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------x
In re Application to Unseal the Docket
and Contents Thereof in 98 CR 1101
------------------------------------------------x

AMENDED
ORDER
12 MC 150 (ILG)

GLASSER, United States District Judge:

Pending before me is a motion by Wilson, Elser, Moskowitz, Edelman and Dicker

LLP (hereafter "Wilson Elser") to be relieved from continuing to represent Frederick M.

Oberlander in this, the above captioned matter, which was formally filed on February

23, 2012. As the caption explicitly reflects, this motion is, in its genesis, inextricably

bound to 98 CR 1101, which was resurrected on May 18, 2010 in a proceeding for

reasons which the Court will assume are, by now, familiar. The protagonists in that

proceeding were named John Doe and Richard Roe who have since been identified as

Felix Sater and Frederick M. Oberlander, respectively. By Order of Judge Cogan, issued

on August 16, 2012, both Lerner and Wilson Elser were relieved of their continued

representation of Oberlander in all proceedings under docket number 98 CR 1101, Dkt.

#168, familiarity with which is assumed.

This motion by Wilson Elser to withdraw as counsel for Oberlander in this

proceeding, 12 MC 150, is opposed by Oberlander who personally, in several

submissions, vigorously denies Wilson Elser's authority to withdraw and vigorously

denies that it is authorized to appear at all in this proceeding on his behalf. He

vigorously asserts that the only lawyer authorized to represent him is Richard Lerner. It

is crucial to the determination of this motion to address that issue.

As has been indicated above, the resurrection of a sealed criminal case that

commenced in 1998 and finally terminated in 2009, was caused by an emergency

request for relief filed on May 18, 2010, for reasons which are, by now, assumed to be known. One week later, by letter dated May 25, 2010, Wilson Elser, by Lauren J. Rocklin, requested an adjournment to June 8, 2010 to respond to a Temporary Restraining Order and Order to Show Cause, issued by this Court. The letter, on Wilson Elser stationery, read that, "[w]e write on behalf of Fred Oberlander," and was signed "Wilson Elser" by Lauren J. Rocklin. 98 CR 1101, Dkt. #53.

On June 7, 2010, Thomas W. Hyland, in opposition to that Order and by cross-motion, declared under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows: "I am a member of the firm of Wilson, Elser, Moskowitz, Edelman and Dicker LLP, counsel for attorney Frederick M. Oberlander, Esq. . . . . I make this declaration based upon my review of the file maintained for the defense of Oberlander." 98 CR 1101, Dkt. #50. Attached to that declaration was the Declaration, under penalty of perjury, of Fred M. Oberlander, dated June 4, 2010, in opposition to the Order to Show Cause. Dkt. #50-2.

On June 11, 2010, on the letterhead of Wilson Elser, a two page letter signed "Wilson Elser, Richard E. Lerner" began as follows: "We represent non-party respondent Frederick M. Oberlander. At today's appearance, the Court indicated that it felt our firm's interpretation . . ." Dkt. #58 (emphasis added). Virtually every letter received on behalf of Oberlander thereafter was on the letterhead of Wilson Elser, signed by Lerner under the Wilson Elser logo.

The documents numbered 50, 50-2, 53, and 58 corroborate what is related in a Memorandum in Support of Motion to Withdraw submitted by Thomas A. Leghorn of Wilson Elser as follows:

2

> On May 19, 2010, Zurich American Insurance Company engaged Wilson Elser to represent The Law Office of Frederick Oberlander. The agreement was memorialized in a letter addressed to "Tom Hyland, Esq., Wilson Elser Moskowitz Edelman & Dicker LLP, 150 East 42nd Street, New York, NY 10017." Mr. Oberlander was copied on this assignment letter. Wilson Elser subsequently informed Zurich and Mr. Oberlander that the attorneys working on the matter would be Mr. Hyland, Mr. Lerner and Lauren Rocklin.
>
> Mr. Hyland is a member of Wilson Elser and serves as the firm's General Counsel. Pursuant to the assignment letter dated May 19, 2010, Mr. Hyland became the attorney responsible for the management of Mr. Oberlander's representation. Exercising his discretion, Mr. Hyland delegated work on this case to Mr. Lerner, a fellow member of Wilson Elser. At no time did Mr. Oberlander retain Mr. Lerner to represent him in any matter.

12 MC 150, Dkt. #52.

The Zurich letter of engagement, a copy of which is attached to this Order marked "A," authorized Wilson Elser to staff its representation with "one partner, one associate and, if necessary, one paralegal." 98 CR 1101, Dkt. #215-1. In further corroboration of Mr. Leghorn's Memorandum is a letter written on Wilson Elser stationery signed by Richard E. Lerner with copies sent by him to Thomas W. Hyland, Esq., Lauren J. Rocklin, Esq., and Frederick M. Oberlander.

Oberlander acknowledged that Wilson Elser was engaged by his insurer to represent him in May 2010. 12 MC 150, Dkt. #56, at 10.

Wilson Elser, not yet having received the Court's permission to be relieved in this proceeding, in the discharge of its professional responsibility, appeared at the last Court hearing on August 27, 2012 by Irving Hirsch, Esq., who argued successfully on behalf of Oberlander's motion to unseal docket 98 CR 1101.

3

I am asked to consider in my decision on this, Wilson Elser's motion to withdraw, the submissions by both parties to Judge Cogan in 98 CR 1101 leading to his Order of August 16, 2012, together with their submissions in a pending motion before Judge Cogan for reconsideration.

For the reasons that follow, I see no reason to do so and decide this motion entirely upon the submissions of Oberlander in opposition to this motion.

### Discussion

At the onset, I note that an informal appearance[1] in this proceeding, via a letter requesting an adjournment of the hearing scheduled on the motion to unseal was made on Wilson Elser stationery, signed by Coleen Friel Middleton, and docketed on April 18, 2012. Dkt. #30. On August 29, 2012, a letter was received on Wilson Elser stationery requesting "that the docket in this matter be corrected to reflect that I am counsel of record for Frederick Oberlander." Signed, beneath the Wilson Elser logo, Richard E. Lerner.[2] Dkt. #45. On September 21, 2012, a formal Notice of Appearance was filed by Thomas A. Leghorn, Esq., of Wilson Elser, as counsel for Frederick Oberlander, requesting service of all papers on him at the offices of Wilson Elser. Dkt. #51. In a Reply Brief in Further Support of Motion to Withdraw, Leghorn stated that he entered his appearance "not to carry any further work on behalf of Mr. Oberlander, but to file the papers in furtherance of the firm's motion to withdraw." Dkt. #63.

---

[1] A party may appear in an action either formally or informally.  Hayuk v. Hallock, 11 Misc.2d 1086 (S. Ct. Oneida Co. 1958).

[2] I assume that what was intended to be "corrected" was the impression, possibly created, that Coleen Middleton, who signed the letter request for an adjournment, was now counsel of record.

4

I address the discrete issue before me, should Wilson Elser be relieved from representing Frederick Oberlander, by reviewing Oberlander's own submissions in opposition to that motion.

On September 21, 2012, he filed docket #53, alongside the caption of which appears "NOTICE OF FRAUDULENT FILING." That submission is set out in full and reads as follows:

> MAY IT PLEASE THE COURT:
>
> Clients Are not Chattel. On many occasions over many months, but most recently this past Monday, September 17, 2012, I ordered in writing sent to Mr. Thomas Hyland, General Counsel of Wilson Elser, and other partners in that firm that they all, every lawyer in the firm except for Richard E. Lerner and one associate if acting under his direct supervision, are prohibited from filing an appearance in my behalf in this any court for any reason whatsoever. Forthcoming memorandum of law will go into further detail.
>
> This letter does not respond to the merits of the subsequent memorandum in support of motion to withdraw.
>
> This letter is to notice the court and all other parties that Mr. Leghorn's notice of appearance is without authority, is a legal nullity, to be regarded *pro tanto brutum fulmen*, and he is not to receive any communication from anyone, that Richard E. Lerner remains sole attorney of record for me personally, not the firm itself.
>
> Agency or no agency law, no power on earth can justify my forced representation in this or any court by any attorney anywhere. Respectfully, unless this court is prepared to upend the entire Anglo-American history of professional ethics by finding the right of a law firm to force upon a client a fortiori against the client's direct order to the contrary the representation in a federal district court by an attorney he refuses to have speak for him the matter and the necessity of the court's disregard of the appearance and further action is clear.

5

I will separately request the court convene immediate hearings to determine whether to refer this matter for prosecution to the Eastern District of New York but I do now request it be immediately referred to the Eastern District Disciplinary Committee for immediate censure against Mr. Leghorn and all others involved.

Depending on the amount of time required to deal with this illegal and unethical filing of appearance I believe it also will likely be the case that, though filed ECF by PACER and not in person with the clerk, this false and fraudulent filing of appearance may be considered criminal contempt insofar as it may be legally deemed to have occurred in the geographical presence of the court and has generated disruption to the orderly administration of justice. It is well established that filing false, fraudulent, or misleading documents with a court may be the basis for criminal contempt pursuant to 18 U.S.C. §401 (1) if the consequences of dealing with them are sufficiently disruptive. If such be the case here, I expect to file a motion for this court to commence hearings in anticipation of activating Fed. Rul. Crim. Proc 42.

/s/ Frederick M. Oberlander

On September 24, 2012, he filed a 21 page document, Dkt. #56, the previously announced forthcoming memorandum of law, which he styled

OPPOSITION TO APPLICATION FOR LEAVE TO WITHDRAW

MEMORANDUM OF LAW *IN RE* PROFESSIONAL RESPONSIBILITY AND MOTION TO WITHDRAW

HEARING REQUESTED
ORAL ARGUMENT REQUESTED

APPLICATION FOR INJUNCTIVE RELIEF AND TO STRIKE PAPERS

The first 10 pages of that submission defy summarizing.

I set out, in *haec verba*, those portions of that submission which informs the determination the Court is driven to reach.

6

His assertion, on page 11, that "[c]ommencing with the first proceeding on June 11, 2010, Mr. Lerner appeared as sole attorney of record for me in 98-CR-1101" is, as was demonstrated above, wrong.  Wilson Elser appeared by letter on May 25th and by Thomas Hyland on June 8th in a submission to which Oberlander annexed his declaration under the penalty of perjury.  Dkt. #50 and 50-2.

*   *   *

In his Opposition to the Application to withdraw, Dkt. #56 at 17, Oberlander references a letter dated September 17, 2012, addressed to Thomas Hyland, partner in and general counsel of Wilson Elser, Dkt. #56-2, which is attached in full and marked "B," but portions of which I set out here:

> **As to Hyland. Middleton and Hirsh**: You are to take no action to represent me or purporting to represent me. You will file or cause to be filed no papers of any kind in any court or other juridical or adjudicative forum or before such similar tribunal for any reason that represent me or purport to represent me, appear for me or purport to appear for me, or take action or purport to take action for me or in my behalf. You will not contact anyone in any place at any time representing me or purporting to represent me.
>
> You are to take no action to cause anyone in your firm other than Richard Lerner to represent me or purport to represent me or do anything or forbear from doing anything which if done by one of the above would be a breach of my direct order to him or her.
>
> *   *   *
>
> You are forbidden to access anything in Mr. Lerner's possession, care, custody, or control, if tangible by any means, physically or electronically, and if intangible by any means,
> *   *   *

Hyland confirmed receiving that letter by email sent the very next day, which

Oberlander attached, Dkt. #56-3, which I attach hereto and mark "C." Every line of that

letter is completely blacked out.

Oberlander then requests that:

> Respectfully, this court must make clear that *no matter what, a client has the absolute, indefeasible rights to forbid any attorney to speak in court in his behalf, and to revoke any prior authorization to the contrary.*

> Were this court to hold otherwise, that an attorney like Hyland may force-feed upon an unwilling client an unwanted advocate to appear and speak for him in court – like a farmer may force-feed corn down the gullet of a goose – showing no more regard for the client than the farmer shows for the goose, it would upend the fundamental tenet of American jurisprudence, *viz. every client is free to choose who may speak for him in court **and who may not**.*

> \*   \*   \*

> Assuming a hearing is held, I will admit evidence that Hyland's attempts to withdraw, which have now hit criminal proportions, are pretextual, that he is manufacturing non-existent conflict to accomplish indirectly what he cannot legally do directly, which is to withdraw for delayed payment.[3]

> \*   \*   \*

> I would be the first to admit that accusations against Hyland and Leghorn of criminal, if not to say felonious, misconduct would make it problematic to continue to be represented by the firm.

> \*   \*   \*

---

[3] No reference to non-payment is to be found in any of Wilson Elser's applications to withdraw.

8

> But, given the balance of the equities here, and their appalling misconduct in fraudulent filings, this court can and must order Hyland, Leghorn, Middleton, Irving Hirsh, a partner in the firm also involved, and all others acting in concert with them, etc. to do nothing to interfere with Lerner's representation of me while he is winding up his participation in the firm.

Dkt. #56 at 19.

Oberlander's submissions would urge the belief that the firm of Wilson Elser has unilaterally and for no reason or justification, decided to enlist itself on his behalf and represent him and has assiduously continued to do so since May 2010. It would be remarkable were that so. Rather, it is beyond cavil that Oberlander notified his malpractice insurer of potential liability and they responded by assigning Wilson Elser to represent him. Attach. A. Oberlander knew that and, as indicated above, attached his sworn declaration to a submission on his behalf by Hyland early on in the case. As has been already noted, every document submitted in this litigation, beginning with a letter appearance on May 25, 2010, was in the name of Wilson Elser and continued as late as August 29, 2012, as is clearly manifested by Lerner's Notice of Appearance.

Rule 1.4 of the Local Rules of the Southern and Eastern Districts of New York, provides in relevant part that:

> An attorney who has appeared as attorney of record for a party may not withdraw from a case without leave of the court granted by order. Such an order may be granted only upon a showing by affidavit <u>or otherwise of satisfactory reasons for withdrawal</u> . . . . (emphasis added).

That the law firm Wilson Elser was engaged to represent Oberlander and appeared on his behalf with his knowledge is beyond dispute. Rule 1.0(h) of the New York Rules of Professional Conduct defines "'Firm' or 'law firm' [to] include[], but is not

9

limited to a lawyer or lawyers in a law partnership, [or] professional corporation . . . ."

Rule 1.0(m) defines "Partner" as denoting "a member of a partnership, [or] a shareholder in a law firm . . . ."

It requires no elaborate citation of authority to understand that the "law firm," the partnership, the legal entity, can appear only through one of its lawyers, who in this case always appeared under the "umbrella" of Wilson Elser. That understanding is explicitly reflected in Rule 11(c)(1). Oberlander cites at some length to Pavelic & LeFlore v. Marvel Entm't. Grp., 493 U.S. 120 (1989), but also appears to understand that Pavelic was superceded by an amendment to Rule 11 in 1993 at page 8 of his Opposition, Dkt. #56, where he writes: "To be sure, the offending attorney of record (circa 1983) as Rule 11 now permits sanctioning the firm as well . . . ." Section 11(c)(1) of that Rule now provides in relevant part:

> If, after notice and reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court may impose an appropriate sanction on any attorney, law firm . . . that violated the rule, or is responsible for the violation . . . (emphasis added).

The amendment is a tacit recognition of a basic tenet of the common law of partnership as embodied in Section 20(1) of the New York Law of Partnership, viz.,

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership . . . .

That the words cascading from Oberlander's submissions as displayed above and in the attachments thereto provide the "otherwise satisfactory reasons" of Rule 1.4 for

being relieved, is compelling.

Compelling, too, are the unambiguous words of the New York Rules of Professional Conduct, which drive this Court to conclude that Wilson Elser's motion to withdraw must be and is hereby granted. Those are Rules 1.16(b)(3) and 1.16(c)(7) which provides that a: "lawyer <u>shall</u> withdraw from the representation of a client when . . . the lawyer is discharged." (emphasis added).

Oberlander's assertion that the Court "<u>must</u> order Hyland, Leghorn, Middleton, Hirsh and all others acting in concert with them etc." (which literally would include Lerner) can only be interpreted as discharging the firm.

Rule 1.16(c)(7) provides that:

> [A] lawyer <u>may</u> withdraw from representing a client when . . . the client fails to cooperate in the representation or otherwise renders the representation unreasonably difficult for the lawyer to carry out employment effectively. (emphasis added).

To cite authority for the obviously indisputable application of those Rules to the facts as they are revealed above would be an affectation of research. But perhaps the citation of just two cases would not be so regarded. One that almost mirrors this one, <u>Furlow v. City of New York</u>, No. 90 Civ. 3956, 1993 WL 88260 (S.D.N.Y. March 22, 1993); and <u>Louima v. City of New York</u>, No. 98 CV 5083, 2004 WL 2359943*, at 61 (S.D.N.Y. Oct. 5, 2004) (citing cases).

To paraphrase Oberlander's graphic argument for denying the motion is to mandate the reason for granting it. To hold that Wilson Elser must continue to represent him is to force-feed an unwilling law firm upon an unwanted client - "like a

farmer may force-feed corn down the gullet of a goose, showing no more regard for the [law firm] than the farmer shows for the goose." Dkt. #56 at 17-18.

The Court is not unaware that Wilson Elser's motion is granted notwithstanding that its motion is bottomed on the conflict of interest presented to Judge Cogan in its similar motion to withdraw, which was granted in 98 CR 1101. The determination made here and made entirely upon the words of Oberlander can hardly be claimed by him to be granted upon an argument of which he had no notice. To quote him again, "this is not a team sport," Dkt. #56 at 16, and he can hardly claim that he is being prejudiced. Admittedly not on point but informing the path to follow by a nisi prius court in deciding a case on a ground not presented are, for the most part, appellate cases. See, e.g., Bruh v. Bessemer Venture Partners III, 464 F.3d 202, 205 (2d Cir. 2002) ("Holding that we may affirm on any basis for which there is sufficient support in the record"); Shumway v. United Parcel Serv., Inc., 118 F.3d 60, 63-64 (2d Cir. 1997) ("It is beyond cavil that an appellate court may affirm the judgment of the district court on any ground appearing in the record"). See also Dandridge v. Williams, 397 U.S. 471, 475 n.6 (1970) ("The prevailing party, may, of course, assert in a reviewing court, any ground in support of his judgment, whether or not that ground was relied upon or even considered by the trial court."); United States v. Torrellas, 455 F.3d 96, 103 (2d Cir. 2006) (finding that a court reviews for plain error claim of error not raised in district court).

Informative, too, is Rule 56(f) of the Federal Rules of Civil Procedure, which permits a court to grant a motion for summary judgment on grounds not raised by a party. The prerequisite of giving notice and a reasonable time to respond has no

relevance here where the grounds not stated by Wilson Elser are provided by Oberlander himself.

Financial concerns, which are alluded to in paragraph 7 of Lerner's Declaration, Dkt. #54-2, are matters between Oberlander and his insurer. This Order grants the motion to withdraw made by Wilson Elser only. Lerner has made no motion to withdraw and this Order does not address one. He has filed his own notice of appearance, albeit on Wilson Elser stationery, requesting specifically that the record reflect that. Dkt. #45.

I am also not unaware that Wilson Elser may, understandably, believe that the Order granting the firm of Wilson Elser to withdraw must also embrace its members, including Lerner, given the definition of "firm" or "law firm" cited above in Rule 1.0(h). Were it not for Lerner's manifest insistence that his Notice of Appearance be recorded and the Notice of Appearance of Leghorn, Dkt. #51, that belief would have facial merit. It is obvious, however, that those filings at the very least (to say nothing of the submissions by Oberlander and Lerner) bespeak a tension within that firm. To the extent that Lerner's continuation as a partner of the firm may raise concerns about partnership liability for his conduct, see, e.g., NY Partnership Law § 20; Fed. R. Civ. P. 11(c)(1), supra, that is a matter for them to resolve.[4]

---

[4] Contradictory views deterred me from making mention of Oberlander's statement on page 19 of his Opposition, Dkt. #56, that he was notified by Lerner on September 10th of his "likely imminent departure from the firm" and that he elected to follow him. In his Reply Brief in Support of the Motion to Withdraw, Mr. Leghorn writes that "to our knowledge . . . there is no evidence of Mr. Lerner's imminent departure." Dkt. #63 at 4 n.7.

For the foregoing reasons, the motion of Wilson Elser for permission to withdraw from continued representation of Oberlander in 12 MC 150 is hereby granted. Oberlander's request for a hearing and injunctive relief is denied.

SO ORDERED.

Dated:        Brooklyn, New York
              October 9, 2012

_____
I. Leo Glasser

A



May 19, 2010

*Via E-mail Thomas.Hyland@wilsonelser.com*

Tom Hyland, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
150 East 42nd Street
New York, NY  10017

RE:    American Guarantee & Liability Insurance Company
       Lawyers Professional Liability Insurance

       ███████████████████████████

       Insured:      The Law Office of Frederick Oberlander

       ███████████████████████████

       Claimant:     Felix Satter

American Guarantee & Liability
Insurance Company

Specialty Claims

P.O. Box 968041
Schaumburg, Illinois 60196-8041

Telephone (973) 394-5831
Fax (866) 255-2962
http://www.zurichna.com

Dear Tom:

This letter follows my conversation with you regarding the above-referenced matter.  As we discussed, please represent the interests of our Insured, The Law Office of Frederick Oberlander, with regard to the above-referenced matter.

Zurich's Nonpublic Personal Information Confidentiality Agreement is attached for your review.  Please safeguard the enclosed records and all future information that we forward to you in accordance with this agreement.

As you are aware, during the course of this litigation you and your firm are to follow Zurich North America' Litigation Management Guidelines for Claims Defense Counsel.  The Guidelines explain the Philosophy, Case Development, Staffing, and Reporting Requirements expected of all defense counsel handling litigation for Zurich North America.  Please contact me if you do not have a current copy of the Guidelines, or if you have any questions regarding the requirements expected of defense counsel.

Fees for services should be presented in accordance with Zurich North America's Litigation Management Guidelines for Defense Counsel. Please see your billing manager or contact the Litigation Management Department (847-605-6035) with any questions regarding Zurich's billing expectations or the electronic billing program.

May 19, 2010
Page 2

The policy limits are ████████████████████████████████
The insured has a ████████████████████████████████

The following information, (where available) is provided to allow for the immediate case handling needs.

1.   *Initial Pleadings:*
     To be provided.

2.   *Allegations of Claim:*
     To be provided.

3.   *Coverage:*
     ███████████████████████████

4.   *Parties to Defend:*
     See first paragraph above.

5.   *Preliminary Liability/Damages Assessment:*



6.   *Staffing*
     As of this date, you are authorized to have one partner, one associate and, if necessary, one paralegal assigned to this matter. If additional staffing is required, you must receive specific, written authorization from the undersigned prior to any additional individuals commencing work on this file.

Please call me at (973) 394-5831 within thirty (30) days to conference this matter. Please be prepared to discuss the critical issues affecting this matter and the development of a strategy, case management plan, and budget. We will also discuss staffing of the matter to include the hourly rates for each legal professional expected to be involved in the case.

May 19, 2010
Page 3

Within sixty (60) days of the assignment of this case, you should submit a
written case management plan and budget for my review and our
implementation. I have attached copies of Zurich's Budget form and
Reporting Guides for Case Management Initial and Subsequent
Development Plans to this letter for your reference and use to concisely
memorialize the activities, issues and strategies that we discussed and
agreed upon. We will schedule future strategic planning conferences
during each of our conferences based on case specific milestones.

Please note that we must conference the matter prior to the development of
a written case management plan and budget. I look forward to working
with you toward a successful resolution of this matter and thank you for
accepting this assignment.

Very truly yours,
American Guarantee and Liability Insurance Company

*Lisa Kaplan*

Lisa Kaplan
Claims Counsel

cc:     Frederick Oberlander, Esq.
        Via E-mail: Fred55@aol.com

May 19, 2010
Page 4

## Nonpublic Personal Information Confidentiality Agreement

Zurich American Insurance Company and its affiliated companies shown below (collectively referred to as "Zurich"), have a privacy policy concerning the treatment of nonpublic personal information of its customers including, but not limited to, claimants and policyholders. Federal and State laws prohibit Zurich from disclosing nonpublic personal information to nonaffiliated third parties unless otherwise permitted or required by law. Nonpublic personal information is generally information that personally identifies an individual and which is not otherwise available to the public. Nonpublic personal information includes both financial and health information of such individuals.

By undertaking this assignment for Zurich, the Company referenced on this assignment sheet (hereinafter referred to as "you") agrees to:

(1) Protect the confidentiality of all nonpublic personal information that the Company obtains from or on behalf of Zurich and not disclose such information outside the Company's organization except as required to perform the Company's service obligations to Zurich, or as permitted or required by federal or state law; and

(2) Restrict access to all nonpublic personal information that the Company obtains from or on behalf of Zurich to those individuals in the Company's organization that require such information in order to perform the Company's service obligations to Zurich; and

(3) Use all nonpublic personal information only for the purpose authorized by Zurich; and

(4) Assume full and complete responsibility for all claims, demands, losses, costs, expenses (including reasonable attorney's fees and court costs), obligations, liabilities, fines, penalties and other damages of any and all kinds (collectively referred to as "Damages") against Zurich arising from or related to an actual or alleged breach by the Company of the foregoing obligations of confidentiality and non-disclosure, except for breaches resulting from the Company's acts or omissions taken at the request of or under the direction of Zurich; and

(5) Maintain practices and procedures to protect the confidentiality of all nonpublic personal information that the Company obtains from or on behalf of Zurich and allow Zurich, with at least thirty (30) days written notice, to audit the Company's practices and procedures for protecting such information. This audit will occur at a time and place convenient to Zurich and the Company.

The Company further agrees that a breach of the foregoing obligations of confidentiality and non-disclosure may give rise to an irreparable injury to Zurich inadequately compensable in Damages. Accordingly, Zurich may seek (without the posting of any bond or other security) injunctive relief against any such breach, in addition to any other legal and equitable remedies which may be available, and the Company consents to the obtaining of such injunctive relief.

These confidentiality and non-disclosure obligations shall survive any termination of this Agreement or other relationship with Zurich.

American Guarantee and Liability Insurance Company, American Zurich Insurance Company, Assurance Company of America, Colonial American Casualty & Surety Company, Empire Fire and Marine Insurance Company, Empire Indemnity Insurance Company, Fidelity and Deposit Company of Maryland, Maine Bonding and Casualty Company, Maryland Casualty Company, Maryland Insurance Company, Maryland Lloyds, Mountbatten Surety Company. Inc., National Standard Insurance Company, Northern Insurance Company of New York, Steadfast Insurance Company, Valiant Insurance Company, Zurich American Insurance Company, Zurich American Insurance Company of Illinois

May 19, 2010
Page 5

### CASE MANAGEMENT PLAN / INITIAL REPORT
#### (Reporting Guide)

(The following directives for the Case Management Report/Initial Report are found in Zurich North America's Litigation Management Guidelines for Claims Defense Counsel, Sec. IV(A)(2), and are restated below, with clarifications, for your convenience.)

"On a date mutually agreed upon by counsel and the claims professional, but **no later than 60 days** from receipt of the assignment, counsel should send a Case Management Plan / Initial Report with the following information:

1)  A summary of the allegations in the complaint, the factual basis for the litigation, a summary of the information developed during the preliminary investigation, and a preliminary evaluation of liability/compensability and damages.

2)  A case strategy, as agreed to in the case conference, providing the following:

    a)  Identify each significant activity counsel/claims professional will initiate (e.g., investigation, motions, discovery, legal research, etc.) before the next scheduled case conference (see below).

    b)  Identify discovery and motions that have been or are likely to be initiated by other parties before the next scheduled case conference (see below).

    c)  Estimate the completion date for each activity.

    d)  State the estimated expenses for each activity (to be recorded in the attached Budget Plan).

3)  Discussion of the potential for early disposition of the case by settlement, and recommendations with respect to arbitration, mediation, or direct settlement negotiations.

4)  Discussion of the potential success of dispositive motions prior to, or after, the commencement of discovery and when motions to dismiss or for summary judgment are appropriate.

5)  An estimate of the probable trial date."

The Case Management Plan / Initial Report is the starting point for a continuing dialog between the claims professional and counsel as to the effectiveness of the defense strategy, with modifications in that strategy being made when necessary.  To ensure an ongoing review of the defense strategy, counsel and the claims professional are expected to periodically conference to discuss strategic outcomes, impacts and future strategic direction.  As part of each strategy conference please schedule a subsequent case strategy conference to follow up on the completion and impact of plan milestones or significant case events (e.g., receipt of documents, end of discovery, etc.)  To that end, all Case Management Plans / Initial Reports are to include the following statement:
**THE NEXT CASE CONFERENCE BETWEEN THE CLAIMS PROFESSIONAL AND DEFENSE COUNSEL IS SCHEDULED FOR:**
Thank you,

**ZURICH NORTH AMERICA**

(Page 6 of 6)
Case 1:12-mc-00150-ILG   Document 69   Filed 10/09/12   Page 21 of 27 PageID #: 584
Case 1:98-cr-01101-ILG   Document 215-1   Filed 09/29/12   Page 6 of 6 PageID #: 2441

May 19, 2010
Page 6

## LIABILITY CASE MANAGEMENT PLAN BUDGET

| General Activity | Specific Actions | Est. Hours | Rate | Amount |
|---|---|---|---|---|
| | | | | |
| Case Assessment, Development & Administration | | | | |
| | Strategic Planning Activities | | | |
| | | | | |
| | | | | |
| | | | | |
| Pretrial Pleadings and Motions | | | | |
| | | | | |
| | | | | |
| | | | | |
| Discovery | | | | |
| | | | | |
| | Depositions | | | |
| | | | | |
| | | | | |
| | | | | |
| Investigation | | | | |
| | | | | |
| Appeals | | | | |
| | | | | |
| | Legal Research | | | |
| | Retention & development of experts | | | |
| Trial, Settlement or ADR Preparation | | | | |
| | | | | |
| | | | | |
| | | | | |
| Significant Estimated Expenses | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Total Estimated Budget as of MM/DD/YYYY | | | | $ |

B

LAW OFFICE OF FREDERICK M. OBERLANDER

**FREDERICK M. OBERLANDER**
ATTORNEY-AT-LAW

fred55@aol.com

28 SYCAMORE LANE (PO BOX 1870)
MONTAUK, NEW YORK 11954
TELEPHONE 212.826.0357
FAX 212.202.7624

September 17, 2012

Thomas Hyland, Esq.
████████
Coleen Middleteon
Irving Hirsh, Esq.

To the above:

**As to Hyland, Middleton, and Hirsh**: You are to take no action to represent me or purporting to represent me. You will file or cause to be filed no papers of any kind in any court or other juridical or adjudicative forum or before such similar tribunal for any reason that represent me or purport to represent me, appear for me or purport to appear for me, or take action or purport to take action for me or in my behalf. You will not contact anyone in any place at any time representing me or purporting to represent me.

You are to take no action to cause anyone in your firm other than Richard Lerner to represent me or purport to represent me or do anything or forbear from doing anything which if done by one of the above would be a breach of my direct order to him or her.

████████████████████████████████████████████████████████
████████████████████

The above orders to you include MY direction not to make any attempt to exert any control or influence over Mr. Lerner that would cause, or threaten to cause, or might cause or threaten to cause any attorney in his stead, by direct order or fear or intimidation or obstruction or impedance, regardless of any distinction between subjective and objective standards, such as would cause any word of any advice, oral or written, or any word of any document or oral statements made as my attorney, or the decision to refrain from making such, that he otherwise would choose to make or refrain from making, including without limitation by ordering him not to file things without approval or removing his files or any other means manner or method.

████████████████████████████████████████████████████████
████████████████████████

You are forbidden to access anything in Mr. Lerner's possession, care, custody, or control, if tangible by any means, physically or electronically, and if intangible by any means, including without limitation questioning or deposition, which contain or would express what as to third parties would be protected from disclosure by client confidentiality or work product without prior written consent from me or court order. Mr. Lerner's ██ ████ right pursuant to the Rules to seek consultation with other attorneys as to his representation of me is overridden as to you three and he is forbidden such communication with you three. Nothing in this paragraph precludes normal course information such as would be reasonably necessary as to timesheets, schedules, calendars, and other administrative matters.



I appointed Mr. Lerner to speak in my behalf as attorney of record. I have made it clear almost monthly to Mr. Lerner and in recent months also to you that that authority stops there and that no one other than Mr. Lerner and, again to the extent she is doing so solely under his control, ███████ is to speak for me.

The above, this date confirmed as having been to the maximum extent in force and effective since the beginning of time and by this letter ordered to continue in effect, expanded as necessary, until further notice.

/s/ Frederick M. Oberlander

C

17

Response to Letter September 17, 2012

mail.aol.com/37001-111/aol-6/en-us/mail/PrintMessage.aspx 1/2

From: Hyland, Thomas W. <Thomas.Hyland@wilsonelser.com>

To: 'fred55@aol.com' <fred55@aol.com>

Cc: Hirsch, Irving <Irving.Hirsch@wilsonelser.com>; Middleton, Coleen Friel
<Coleen.Middleton@wilsonelser.com>

Subject: Response to Letter September 17, 2012

Date: Tue, Sep 18, 2012 4:52 pm

Mr. Oberlander:

I received your letter dated September 17, 2012. ████████████████████████
████████

