UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------X

UNITED STATES OF AMERICA,

    -against-

                                       00 CR 196 (ILG)

DANIEL LEV, et. al.,

                Defendants.

------------------------------------------------X

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D. N.Y.
★ NOV 1 6 2000 ★
TIME A.M. _____
P.M. _____

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT DANIEL LEV'S PRETRIAL MOTIONS

                                             JEFFREY LICHTMAN
                                             41 Madison Avenue
                                             34th Floor
                                             New York, New York 10010
                                             (212) 689-8555

                                             Maranda E. Fritz
                                             FRITZ & MILLER
                                             565 Fifth Avenue
                                             New York, New York 10017
                                             (212) 983-0909

                                             Attorneys for Daniel Lev


#129

## POINT IV

### DEFENDANT DANIEL LEV IS ENTITLED TO PRETRIAL DISCLOSURE OF ANY AND ALL INFORMATION FALLING WITH THE PURVIEW OF BRADY V. MARYLAND[8] AND ITS PROGENY

As noted previously, Daniel Lev's involvement in the wide-ranging crimes charged in this Indictment are limited to his single investment in U.S. Bridge. According to the government, cooperating witnesses Gennady Klotsman and Felix Sater served as the solicitors of Lev for his investment. Therefore, the lion's share of proof against Lev will come from the mouths of these cooperators. As such, the credibility of these witnesses are of paramount importance to Daniel Lev's defense.

With this in mind, on March 27, 2000 the defendant served a general discovery letter on the government which requested disclosure of all Brady material known to the government. In the government's Rule 16 letter of April 21, 2000, no mention was made of the government's possession of any Brady material. The government's May 24, 2000 "general index of the documents available for inspection and copying", however, contains materials which clearly are impeachment materials, i.e., "People v. Sater" materials.

As these materials were not forwarded to the defense, Lev served a more specific Brady demand pursuant to its letter of October 10, 2000. In this letter, Lev requested:

> bank, phone and financial records of Eugene Klotsman and Felix Sater; NASD/SEC disciplinary and employment history for Klotsman and Sater; customer complaints regarding Klotsman and Sater; materials from People v. Sater; and any recorded witness statements from these or any government witness which serve to

---

[8] Brady v. Maryland, 373 U.S. 83 (1963).

33

impeach them or exculpate the defendant. United States v. Shvarts, 90 F. Supp.2d 219 (E.D.N.Y. 2000)(Glasser, J.). [This] request is not limited to materials found in your general index. Any other such materials within the government's possession or control is also requested.

(Exhibit A)   As of the date of this motion, the government has not responded to this request.

Clearly, the government's responses (and lack of responses) indicates that it does not consider impeachment material to fall under Brady and its progeny. As will be shown below, the government's position is belied by the authority of this Court, the Second Circuit and the Supreme Court. With this motion, the defendant requests that such impeachment material be produced immediately in order that the defendant can fully exploit it through his own investigation.

1. **This Court Should Direct the Government to Disclose, at This Time, all Brady Material which Requires Preparation by the Defendant to Obtain its Full Efficacy**

The Second Circuit has held that exculpatory evidence, which includes material that the defense might use to impeach a critical government witness, must be turned over sufficiently in advance of trial to allow "for full exploration and exploitation by the defense." Grant v. Alldredge, 498 F.2d 376, 382 (2d Cir.1974). Such early disclosure follows from the principle that "[o]rdinarily it is disclosure rather than suppression, that promotes the proper administration of criminal justice." United States v. Baum, 482 F.2d 1325, 1331 (2d Cir. 1973). See also United States v. Leung, 40 F.3d 577, 582 (2d Cir. 1994)("upon a request by a defendant, the Government has a duty to turn over all material exculpatory evidence in its possession, ... including material impeachment evidence relating to government witnesses.").

In United States v. Green, 144 F.R.D. 631 (W.D.N.Y. 1992), the court had occasion to consider the issue of pretrial disclosure of Brady material where the government offered to

34

RJN 00  000008  102212

disclose Brady material one week prior to trial. The court concluded that this proposal not only failed to satisfy the government's obligations, but more importantly, failed to insure that the defendant would be able to effectively utilize any material disclosed.

After surveying the relevant case law, the court concluded that the resolution of requests for pretrial disclosure of Brady material requires a balancing of several factors. The court acknowledged that, at least in the abstract, unnecessary pretrial disclosure could lead to such potential problems such as witness tampering, bribery or the manufacturing of defense evidence. On the other hand, the court recognized that if the principles underlying Brady were to have any real meaning, in instances in which the information was of such a nature that pretrial preparation would be required to insure meaningful use by the defense, pretrial disclosure of Brady should be ordered. The court turned to the decision in United States v. Pollack, 534 F.2d 964 (D.C. Cir. 1976), for the rationale that it ultimately applied in resolving the Brady issue. The decision in United States v. Pollack, although a Fifth Circuit case, was written by Judge Lumbard of the Second Circuit. As Judge Lumbard explained in Pollack:

> Disclosure by the government must be made at such a time as to allow the defense to use the favorable material effectively in the preparation and presentation of its case, even if satisfaction of this criteria requires pre-trial disclosure (citations omitted). The trial judge must be given a wide measure of discretion to insure satisfaction of this standard. While some courts have held that Brady affords no pretrial discovery rights to the defendants (citations omitted) we believe that the application of a strict rule in this area would inevitably produce some situations in which late disclosure would emasculate the effects of Brady or other situations in which premature disclosure would necessarily encourage those dangers that militate against extensive discovery in criminal cases . . . courts can do little more in determining the proper timing for disclosure than balance in each case the potential dangers of early discovery against the need that Brady purports to serve of avoiding wrongful convictions.

35

Id. at 973-74.

Courts of this Circuit, on many occasions, has reached the same conclusions as the courts in Pollack and Green. In United States v. Mitchell, 372 F.Supp. 1239, 1257 (S.D.N.Y. 1973), appeal dismissed and mandamus denied sub. nom. Stans v. Gagliardi, 485 F.2d 1290 (2d Cir. 1973), the court rejected the blanket assertion "that Brady imposes no pretrial obligation on ... the government," holding instead that:

> the due process implications of Brady [obligate] the government to disclose exculpatory information as soon as the character of such information is recognized. This obligation has no chronological boundaries, but applies equally to the pretrial trial and post-trial stages of a proceeding.

Id. at 1251 (emphasis in original).

Similarly, in United States v. Deutsch, 374 F.Supp. 289, 291 (S.D.N.Y. 1974), Judge Frankel ordered the prosecutor to permit discovery and inspection of all exculpatory material as "promptly as reasonably possible." The court stressed:

> it should be obvious to any one involved with criminal trials that exculpatory information may come too late, if it is given only at trial, and that the effective implementation of Brady v. Maryland must, therefore, require early production in at least some situation.

Id. at 211 (emphasis added).

The court in United States v. Crozzoli, 698 F. Supp. 430, 436-37 (E.D.N.Y. 1988), which dealt with impeachment material constituting agreements between the government and civilian witnesses, held that Brady requires timely pretrial disclosure of all exculpatory information, stating:

> Surely, such a dilution of Brady [i.e., a reading of Brady as not imposing pretrial disclosure obligations] is not warranted by a literal reading of that decision, viz:

36

> We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violated due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.
>
> 373 U.S. at 87, 83 S.Ct. at 1196 (emphasis added). <u>To permit the prosecution to withhold exculpatory evidence despite a request until such time as the prosecutor chooses to disclose it, is to permit the prosecutor to control, to some extent, the preparation of a defense.</u>

Id. at 436-37 (emphasis added).

The court in <u>Crozzoli</u>, following the decisions in <u>United States v. Mitchell</u>, supra, and <u>United States v. Goldman</u>, infra, ordered the government to "disclose to the defendant such evidence as it is obligated to disclose by <u>Brady</u>." Id. at 437. See <u>United States v. Goldman</u>, 439 F.Supp. 337, 349 (S.D.N.Y. 1977)("if exculpatory evidence is produced for the first time at trial, the defendant may not have an adequate opportunity to effectively utilize the material, particularly if it points to the existence of other evidence helpful to the defendant"); <u>United States v. Shoher</u>, 555 F. Supp. 346, 352 (S.D.N.Y. 1983), quoting <u>United States v. Deutsch</u>, 374 F.Supp. 289 (S.D.N.Y. 1974)(evidence in the government's possession favorable to the defendant, including evidence pertaining to the credibility of government witnesses, should be disclosed far enough in advance of trial to allow for effective "evaluation, preparation and presentation at trial"); <u>United States v. Jones</u>, 85 Cr. 1075 (CSH), slip op. (S.D.N.Y. May 28, 1985)(government ordered to produce <u>Brady</u> materials, including impeachment, immediately, so that defendants "may have adequate time to evaluate and utilize the information in preparing their defenses"); <u>United States v. DePeri</u>, 778 F.2d 963, 983 (3d Cir. 1985).

37

2. **The Government Should Be Compelled to Provide all Brady Material, Including Impeachment Material of Government Witnesses**

Federal prosecutors routinely ignore the Brady/Bagley mandate by their contention that any material falling under the category of "impeachment," whatever its exculpatory value, need not be disclosed until after the witnesses testify. In so arguing, they mistakenly contend that the Jencks Act, 18 U.S.C. § 3500, somehow supersedes the defendant's Sixth Amendment rights guaranteed by Brady.

There can be no serious dispute over the proposition that Brady encompasses material that "might well alter the jury's judgment of the credibility of a significant prosecution witness." Perkins v. LeFevre, 691 F.2d 616, 619 (2d Cir. 1982); citing Giglio v. United States, 405 U.S. 150, 154 (1972); United States v. Chitty, 760 F.2d 425, 428 (2d Cir.), cert. denied, 474 U.S. 945 (1985) ("The Brady rule applies equally to impeachment and exculpatory evidence"). Thus, in United States v. Bagley, 473 U.S. 667 (1985), the Court stated:

> Impeachment evidence . . . as well as exculpatory evidence, falls within the Brady rule. See Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Such evidence is 'evidence favorable to an accused,' Brady, 373 U.S. at 87, 83 S.Ct. at 1196, so that, if disclosed and used effectively, it may make the difference between conviction and acquittal. Cf. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) ("The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend").
>
> The Court of Appeals treated impeachment evidence as constitutionally different from exculpatory evidence.... This Court has rejected any such distinction between impeachment evidence and exculpatory evidence.

Id. at 676. See also Kyles v. Whitley, 514 U.S. 419, 433 (1995)("In United States v. Bagley, the Court disavowed any difference between exculpatory and impeachment evidence for Brady

35

purposes ..."). See also United States v. Shvarts, 90 F. Supp.2d 219, 225 (E.D.N.Y. 2000)(Glasser, J.)(Bagley "held unequivocally" that impeachment evidence as well as exculpatory evidence falls within the Brady rule). Nevertheless, the government would set up its own artificial distinction, claiming that only substantively exculpatory evidence is covered by Brady, and impeachment materials are governed solely by the Jencks Act. That the government may not hide behind the Jencks Act to prevent pretrial disclosure of material covered by both Jencks and Brady, however, is made clear in the opinion of the court in United States v. Gallo, 654 F.Supp. 463 (E.D.N.Y.), mandamus granted on other grounds, sub. nom.; In re United States, 834 F.2d 283 (2d Cir. 1987). The court relied upon the concurring opinion of Justice Brennan in United States v. Palermo, 360 U.S. 343, 365-66 (1959), discussing 18 U.S.C. § 3500:

> There inheres in an overrigid interpretation and application of the statute [18 U.S.C. § 3500] the hazard of encouraging a practice of government agents taking statements in a fashion calculated to insulate them from production.

Gallo, supra, 654 F.Supp. at 474. The court also stated:

> Such an overrigid reading of § 3500(a) would lead to the conclusion that pretrial discovery is never permissible for any material contained in the statements of prospective witnesses, even if there are alternative bases for such discovery. But that interpretation has never been accepted. For instance, compliance with the Jencks Act discovery schedule does not necessarily satisfy the due process requirements for Brady material. If witness' statements contain material exculpatory to the defendant, due process requires pretrial production under Brady despite the fact that it may be Jencks material as well.

Id. (emphasis added, citations omitted)

Similarly, in United States v. Starusko, 729 F.2d 256 (3rd Cir. 1984), the prosecutor had in his possession three FBI 302 reports based on interviews with a critical government witness, containing inconsistent statements. The government made two reports available the week before

39

trial. The ether report only came into defendant's possession through a third party a few days prior to trial. The government contended that, because the reports were impeachment material, they were governed by the Jencks Act, and not subject to pretrial disclosure.

First, the court made clear that impeachment material is covered by Brady:

> We, have no doubt that the second F.B.I. report qualifies as Brady material. Patrick Logan, the alleged source of the statements contained in the reports, is critical to the government's case. As a key prosecution witness, his credibility may well be determinative of guilt or innocence. . . . Thus, evidence that could be used to impeach Logan's credibility, would clearly be exculpatory.

Id. at 260 (citations omitted). The court further noted that, because the report contained the "F.B.I. interpretation" of the witness' statement, it was not covered by the Jencks Act. Id. at 263.

Most importantly, the court, in discussing the interplay between the Jencks Act and Brady, pointed out that, even if the report could qualify as Jencks material, Brady would nonetheless require its turnover in advance of trial. Thus, the court stated:

> Even if the report contained statements by Logan that could be classified properly as Jencks Act material, that does not mean that it would be exempted from a pretrial disclosure order based on Brady. All Jencks Act statements are not necessarily Brady material. The Jencks Act requires that any statement in the possession of the government -- exculpatory or not -- that is made by a government witness must be produced by the government during trial at a time specified by the statute. Brady material is not limited to statements of witnesses but is defined as exculpatory material; the precise time within which the government must produce such material is not limited by specific statutory language but is governed by existing case law. Definitions of the two types of investigatory reports differ, the timing of production differs, and compliance with the statutory requirements of the Jencks Act does not necessarily satisfy the due process concerns of Brady (citations omitted).

Id. (emphasis in original). See also United States v. Poindexter, 727 F.Supp. 1470, 1485 (D.D.C. 1989) ("The Brady obligations are not modified merely because they happen to arise in the

40

context of witness statements. The government therefore has the obligation to produce to defendant <u>immediately</u> any exculpatory evidence contained in its Jencks materials, including exculpatory impeachment material ....)(emphasis added).

Of course, this entire analysis of the interplay between <u>Brady</u> and the Jencks Act was laid out in this Court's opinion a few months back in <u>Shvarts</u> wherein this Court ruled that

> [a]s to exculpatory or impeachment evidence, it being the view of the court that the constitutional obligations imposed upon the prosecutor by <u>Brady</u>, <u>Giglio</u>, <u>Agurs</u> and <u>Bagley</u> must prevail over the Jencks Act where the two collide, the government is hereby directed to make such evidence known to the defendants.

<u>Shvarts</u>, 90 F. Supp.2d at 228.

Accordingly, the defendant respectfully requests that any <u>Brady</u> material, including impeachment material, in the possession, custody or control of this prosecutorial agency or any sister law enforcement agency that jointly participated in the relevant underlying investigation, be directed to disclose such information, at this time, to defense counsel.[7]

---

[7] Since the cooperators' identities are known to the defense there is no basis for an *ex parte* application to modify the government's obligations due to any perceived "serious threat to the life or safety of a prospective witness ..." <u>Shvarts</u>, 90 F. Supp.2d at 229.

41

RJN 00 000015 102212

## POINT V

### THE DEFENDANT JOINS IN ALL MOTIONS BY HIS CODEFENDANTS INASMUCH AS THESE MOTIONS ARE APPLICABLE TO HIM

The defendant joins in all motions made by his codefendants inasmuch as the motions are applicable to him.

## CONCLUSION

For the foregoing reasons, defendant Daniel Lev's pretrial motions should be granted in their entirety.

Dated:  New York, New York
November 15, 2000

Respectfully submitted,

JEFFREY LICHTMAN
41 Madison Avenue
34th Floor
New York, New York 10010
(212) 689-8555

Maranda E. Fritz
FRITZ & MILLER
565 Fifth Avenue
New York, New York 10017
(212) 983-0909

Attorneys for Daniel Lev