Exhibit 2

1

1

2                        UNITED STATES DISTRICT COURT
                         EASTERN DISTRICT OF NEW YORK
3
       - - - - - - - - - - - - - X
4
       UNITED STATES OF AMERICA,    :
5                                              CR-00-196

6           -against-                    United States Courthouse
                                    :    Brooklyn, New York
7      FRANK COPPA, ET AL,           ·

8
                 Defendants.
9                                   :    February 2, 2001 2000
                                         Ten o'clock a.m.
10     - - - - - - - - - - - - - X
                         TRANSCRIPT OF PROCEEDINGS
11              BEFORE THE HONORABLE I. LEO GLASSER
                    UNITED STATES DISTRICT JUDGE
12     APPEARANCES:

13     For the Plaintiff:      LORETTA E. LYNCH
                               United States Attorney
14                             BY:  ERIC CORNGOLD
                               Assistant United States Attorney
15                             One Pierrepont Plaza
                               Brooklyn, New York 11201
16

17     For the Defendants:     MICHAEL ROSEN, ESQ
                               For Defendant Garafola
18
                               J. BRIAN HANSBURY, ESQ.
19                             For Defendant Montevecchi

20                             JOSEPH GIANNINI, ESQ.
                               For Defendant Persico
21
                               ANDREW WEINSTEIN, ESQ.
22                             For Defendant Cioffoletti

23                             JEFFREY LICHTMAN, ESQ.
                               MIRANDA FRITZ, ESQ.
24                             For Defendant Lev

25                             THOMAS ROTH, ESQ.
                               For Defendant Ray

       HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

2

1

2   A P P E A R A N C E S:   (Continued.)

3                                 RICHARD W. BREWSTER, ESQ.
                                  For Defendant Lombardo
4
                                  DAVID SMITH, ESQ.
5                                 For Defendant Basile

6                                 JOSEPH BENFANTE, ESQ.
                                  For Defendant Temperino
7

8

9   Court Reporter:             Holly Driscoll
                                225 Cadman Plaza East
10                              Brooklyn, New York
                                718-260-2469
11

12
    Proceedings recorded by mechanical stenography, transcript
13  produced by computer.

14

15

16                      *   *   *

17

18        THE CLERK:   Criminal motions, USA versus Ernest

19  Montevecchi, Daniel Persico, John Cioffoletti, Edward

20  Garafola, Daniel Lev, Eugene Lombardo, Lawrence Ray and

21  Abraham Salaman.

22        Counsel, please state your appearances.

23        MR. ROSEN:   Good morning, Your Honor, Michael Rosen

24  for Mr. Garafola.

25        MR. BENFANTE:   Joseph Benfante for Mr. Temperino.

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

3

1          MR. LICHTMAN:   Jeffrey Lichtman and Miranda Fritz for

2   Mr. Lev.

3          MR. WEINSTEIN:  Andrew Weinstein for Mr. Cioffoletti

4   appearing on behalf of Mr. LaRossa.

5          MR. BREWSTER:  Richard Brewster on behalf of Eugene

6   Lombardo.

7          MR. ROTH:   Thomas Roth on behalf of Mr. Ray.

8          MR. HANSBURY:  Brian Hansbury on behalf of

9   Mr. Montevecchi.

10         MR. SMITH:  David Smith on behalf of Rocco Basile.  I

11  would just like the record to be clear we are not officially

12  retained for this case.  I am appearing to inform Your Honor

13  as to what will happen in Mr. Basile's other case, he has

14  another indictment and in that case we've reached an

15  agreement, he will be entering a plea of guilty next Wednesday

16  in front of Judge Pollak.  So, I am appearing here to inform

17  Your Honor that is going to happen in the other case, it will

18  be covering this case and I just want Your Honor to be aware

19  of that.

20         THE COURT:  Well, is Mr. Basile contemplate retaining

21  you for this case?

22         MR. SMITH:  Your Honor, he has, although until the

23  plea is actually entered into we have not been formally

24  retained for this case.  I believe once the plea has been

25  entered, we'll be retained for this case and the other as

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

4

1    well.  We are counsel of record for the other case.

2           THE COURT:  Does Mr. Basile contemplate appearing pro

3    se in the interim?

4           MR. SMITH:  I suppose he could, Your Honor, he is

5    here today.

6           THE COURT:  Would you appear temporarily for

7    Mr. Basile?

8           MR. SMITH:  Yes, Your Honor, I will appear for the

9    purposes of this proceeding today in this matter.

10          THE COURT:  Do we have any other appearances that

11   have to be noted?

12          MR. CORNGOLD:  Eric Corngold for the government,

13   Your Honor.

14          THE COURT:  All right.  I take it everybody is

15   ready --

16          MR. GIANNINI:  Joseph Giannini for Daniel Persico,

17   Jr.

18          THE COURT:  Do we have everybody now?

19          THE CLERK:  Larry Berman had called, he will not be

20   present today but he had joined in the motions.

21          THE COURT:  What I think would be a sensible way of

22   proceeding would be to deal with the motions which raise

23   discrete issues, for example, with respect to the money

24   laundering counts.  I think I'm correct in saying that the

25   motions relating to the money laundering counts were filed by

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

5

1   Mr. Cioffoletti, Mr. Lev and Mr. Montevecchi.  Why don't we

2   deal with those counts and then we can proceed to the others

3   so we don't have everybody standing around with respect to

4   motions that they have no interest in or haven't made.

5          So, why don't we proceed in that fashion, why don't

6   I hear the money laundering counts, the motions filed by

7   Mr. Cioffoletti, Mr. Lev and Mr. Montevecchi.  I'll hear

8   the movants, I'll hear the government in response with respect

9   to those and then we'll move on to the next one.

10          MR. ROSEN:  Could I make a personal request, Your

11  Honor, I don't mean to interfere with my colleagues.  I have a

12  medical situation uptown at around 11:30, 12:00, so if I could

13  be taken next in order on Mr. Garafola's motions, I would

14  personally appreciate it.

15          THE COURT:  Well, as I understand it, Mr. Garafola's

16  motions are simply a motion to sever.

17          MR. ROSEN:  Correct.

18          THE COURT:  And you want a suppression?

19          MR. ROSEN:  Yes, sir, so I'll be prepared to argue

20  those.

21          THE COURT:  Well, there are a couple of severance

22  motions, Mr. Lev, Mr. Nagel and Mr. Ray made severance

23  motions.  We can do those first and then we can move to the

24  money laundering.

25          MR. ROSEN:  Well, I appreciate that.

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

6

1          THE COURT:  Okay.

2          MR. CORNGOLD:  Judge, could I ask if I could sort of

3     move closer towards the center and use the podium.

4          THE COURT:  Why don't we hear the severance motions

5     of Mr. Lev, Mr. Garafola, Mr. Nagel and Mr. Ray.

6          MR. BENFANTE:  Your Honor, the other counsel will

7     stand back?

8          THE COURT:  Yes.

9          Mr. Rosen, do you want to start?

10         MR. ROSEN:  Yes, I'd like to, Your Honor, please and

11    most respectfully, I've put in papers suggesting that the law

12    is very clear in this case of Mr. Garafola that he should be

13    considered in Your Honor's sound discretion for getting a

14    severance but it starts with the fact that he's not even

15    properly joined, most respectfully, under Rule 8 in that as I

16    understand Rule 8, that you have to be indicted, the counts

17    that you're in have to have some connection or relationship,

18    as the rule says, if they are alleged to have participated in

19    the same series of acts or transactions constituting offenses

20    and here if Your Honor looks and you see the chart that we

21    prepared of the indictment, the government prepared of the

22    indictment, Mr. Garafola is in the last two counts, an

23    extortion count and a conspiracy to extort, that has no

24    relationship, in my humble opinion, to the core, the essence

25    of this indictment which is a stock fraud case which basically

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

7

1   alleges that there were entrepreneurs, that there were
2   brokers, that there were nominees all with the central core
3   purpose in an enterprise which Mr. Garafola is not named in
4   to rig the price of four companies, the stock of those
5   companies, to put this money offshore and then to reap the
6   benefits and there's even some allegation that certain
7   nefarious people are enlisted to offer protection to this
8   enterprise and Mr. Garafola is not even named in that. He's
9   on the back end in Counts Nineteen and Twenty I believe in
10  some discrete and different allegation.
11          And just under Rule 8 there is no connection in fact
12  or in law, certainly not in the indictment, Judge Glasser,
13  that links this conduct of Mr. Garafola to the securities
14  fraud. He's not named as having any interest in the
15  companies, he's not named as a nominee or that he's going to
16  get a piece of the pie. Everyone else -- I'm not saying the
17  allegations are true but they did not make any such
18  allegations against Mr. Garafola. He's off there, you know,
19  in the back discretely and I referred, of course, in my papers
20  to Your Honor's decision in Upton and to Judge Block's
21  decision in Montgomery that sets forth the eight criteria.
22          I'm not just moving, Judge Glasser, because there
23  will be a disparity of proof, there clearly will be where
24  maybe Mr. Garafola's trial could last three days or five days
25  or one week and doesn't need, notwithstanding Mr. Corngold's

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

8

1   stretch, all this talk about securities fraud and offshore
2   accounts and brokers and, my goodness, this is -- and I hate
3   to say this but this is a garden variety stock fraud with a
4   little bit of alleged organized crime but Mr. Garafola is not
5   named in that part of the indictment that says people from
6   organized crime, these buzz words, were used to protect this
7   enterprise.  He's not even named in that and he's not even
8   named in the enterprise, so I think even under Rule 8 and I
9   think that gets me somewhere, under Zafiro because Zafiro
10   assumes that you're properly joined under Rule 8 and I say
11   Counts -- what is it, Nineteen and Twenty.

12          THE COURT:  Yes.

13          MR. ROSEN:  Sir, are not properly joined certainly as
14   to Mr. Garafola and the cases, the two cases that the
15   government cites in its brief, I think it is the Scarpa case
16   and I think this Court is pretty familiar with most of these
17   citations, you're talking about somebody that's an integral
18   part of the central core of the crime.  Here Mr. Garafola has
19   no connection in this indictment with what this case is about
20   and that's stock fraud.

21          Judge, what that brings me to and I guess there's
22   always a first even after 36 years, I did not receive the
23   motions made by Mr. Roth, my co-counsel, who represents
24   Mr. Ray, I didn't know until last week or the week before that
25   Mr. Ray has made a motion for also a severance claiming that

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

9

1   he is a government informant or was a government informant and
2   that my client allegedly threatened his life.  I learned that
3   when I read Mr. Corngold's answer to the motions and I
4   wondered, well, what's going on here.  I called Mr. Roth, he
5   was very gracious and he faxed me and sent me his motion
6   papers.  They were filed I think in November, I got them last
7   week.  Clearly, Your Honor, if you want to talk about trial
8   rights or prejudice under trial rights, clearly if Mr. Ray and
9   Mr. Garafola are left in this case, they just can't go to
10  trial together.

11        It looks like from Mr. Roth's moving memorandum that
12  Mr. Ray contemplates taking the stand, defending himself and
13  testifying that Mr. Garafola put a contract out on him which
14  is his position, certainly nothing we acknowledge or agree
15  with but I didn't brief that extensively because I just didn't
16  know about it and I'm not blaming anybody but that's just the
17  way it happened.  I don't know if there is a policy of not
18  advising co-counsel whose client you've accused of having put
19  out a contract, maybe you don't send him the papers but I
20  didn't get the papers.  Again, I'm not blaming Mr. Roth, he's
21  been very cooperative with me since I learned it.  At least
22  now I can stand before this Court and say clearly there should
23  be a consideration, the Court should exercise its discretion
24  and sever Mr. Garafola if there's going to be any proof at a
25  trial that Mr. Garafola allegedly put out a contract, as

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

10

1  Mr. Ray so succinctly puts it in his moving affidavit.

2          So, I think, Judge, you have the papers and we've

3  taken a lot of time in graphically showing where Mr. Garafola

4  is and isn't and you probably hear this all the time, I'm sure

5  you do, everybody wants a severance. Well, I understand that

6  but it's not a severance in terms of, well, it's easier to get

7  acquitted, it is a severance because he doesn't belong in a

8  securities fraud indictment sitting maybe for a couple of

9  months when there's vast testimony about money laundering

10  which he's not charged with, securities fraud which he's not

11  charged with, RICO which he's not charged with, etc. You've

12  heard it before but this is maybe one of the first times that

13  I really feel candid about saying this to this Court, he just

14  doesn't belong in here under either Rule 8 or Rule 14.

15          And just on the back part of the motions that I made,

16  the motion for suppression, you've read the papers on that. I

17  thought Your Honor signed an order, I may be mistaken, I don't

18  think so. I thought Your Honor did sign an order, that's what

19  I just want to call to the Court's attention, and I have it,

20  perhaps it got lost in the shuffle, Your Honor, but my belief

21  is that Your Honor signed an order on November 28, 2000, a

22  scheduling order setting down a suppression hearing and I

23  thought, not that I'm asking for it today for several reasons

24  but I thought I had gotten to the initial stage where we were

25  going to have a hearing.

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

11

1          I think that if Your Honor has some trepidation about
2      that, I can articulate again why I think under this unusual
3      circumstance we should have a hearing even though it is a
4      consensual tape and I've never done that before, move to
5      suppress a consensual tape but I've just learned, again, maybe
6      I'm just not in the loop as I used to be, Judge Glasser, but I
7      just learned that there are extensive electronic surveillance
8      of Mr. Garafola that I haven't been afforded and I'm going to
9      talk to Mr. Corngold about that, I'm not going to waste
10     everybody's time but, again, it may be that may have been the
11     source of how come this agent and this undercover happened to
12     show up where Mr. Garafola was one morning.

13         But I think the question of severance, Judge, is
14     paramount in my mind at this moment and I would ask Your Honor
15     if you have any questions about our application for the
16     severance, I think in my brief career this is the best factual
17     and legal basis I've seen for a severance in a case such as
18     this.   Thank you, Your Honor.

19         THE COURT:   Mr. Corngold, do you want to respond when
20     all the severance motions are made or do you want to respond
21     to each as they're made?

22         MR. CORNGOLD:   Let me respond, I think it actually
23     makes sense to respond particularly to Mr. Garafola's
24     severance motion, though I do think that the issues that the
25     other defendants raise touch on that.

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

12

1        If the Court will indulge me, let me just take a
2   minute or two to describe how the U.S. Bridge of New York
3   fraud evidence and money laundering evidence fits together and
4   fits in with Mr. Garafola, the charges against Mr. Garafola.
5   The U.S. Bridge of New York was one of the four say central
6   securities manipulation, securities fraud that are charged in
7   this indictment that this enterprise is alleged to have
8   manipulated and then laundered the proceeds of.  The U.S.
9   Bridge of New York is owned by Mr. Polito who the indictment
10  alleges is a Gambino associate and the government would prove
11  that he's closely connected to Mr. Garafola who is a Gambino
12  soldier.  Mr. Polito owns the company, as the indictment
13  alleges; Mr. Lombardo, another defendant in the case who's
14  alleged to be a Bonanno associate, brought Mr. Ray in to the
15  deal, to the conspiracy.  The idea was that to facilitate the
16  U.S. Bridge of New York manipulation, to make it a stock that
17  could be sold and could be manipulated, there was the idea
18  that it would be useful to have bonding.  U.S. Bridge of New
19  York was a construction company and the bonding would permit
20  -- would arguably permit U.S. Bridge of New York to bid on
21  larger contracts.  Mr. Lombardo, the alleged Bonanno
22  associate, brought Mr. Ray in to be bribed, basically to get
23  $100,000 to pay a bribe to achieve the bonding.  Mr. Polito
24  pays the bribe, the U.S. Bridge of New York IPO happens, the
25  manipulation happens but the bonding doesn't occur.  So, what

HOLLY DRISCOLL, CSR          OFFICIAL COURT REPORTER

13

1  happens is, and this is where Mr. Garafola comes into the
2  picture, Mr. Garafola on behalf of Mr. Polito begins to seek
3  to extort Mr. Ray, I mean the White Rock Partners, seeks to
4  get the money back that Mr. Polito spent and there will be
5  evidence about the extortion, that's the last two counts
6  in the indictment, and the events sort of culminate in
7  this meeting at a diner where Mr. Garafola is there and
8  Mr. Garafola's claim to this money, his attempt to extort this
9  money is essentially arbitrated, if you will, by other
10 organized crime figures. Mr. Lombardo is there, the Bonanno
11 associate; Mr. Montevecchi who is alleged to be a Genovese
12 soldier is there representing the White Rock Partners.  And
13 the extortion is essentially arbitrated there.

14       Now, why then is this extortion relevant and why is
15 it -- why should it be part of the entire case?  Well, it goes
16 to the heart of the U.S. Bridge of New York securities fraud.
17 In order to prove the extortion, we're going to have to show
18 the bribe, the purpose of the bribe, what Mr. Garafola's claim
19 to the money is and how that works, so that's all going to be
20 there.  Plus, and this is really maybe the more important
21 point, the indictment as a whole alleges that there's this
22 illegal enterprise and in order for this illegal enterprise to
23 operate, they need the organized crime people who are alleged
24 in the indictment to protect, to arbitrate disputes, to
25 resolve problems because they can't go to the SEC when they've

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

14

1   got problems, they can't go to the FBI when they've got
2   problems. So, the indictment alleges a series of times when
3   the White Rock Partners use their organized crime connections,
4   Mr. Coppa, Mr. Montevecchi, Mr. Persico, Mr. Lombardo, to
5   protect them, to arbitrate disputes, to show their power as
6   opposed to the power from the other side.

7          Here Mr. Garafola, who is, as I said, alleged to be a
8   Gambino soldier and that's why this event, this extortion and
9   the resolution of the extortion is at the center of the kind
10  of conduct that goes on in this indictment, it is one of the
11  key moments that these -- that the enterprise needed to use
12  their organized crime associates to resolve the dispute. So,
13  that's what it is doing there, that's why it meets the
14  requirements of Rule 8. It's completely tied in to this U.S.
15  Bridge of New York manipulation and that's why, respectfully,
16  we don't believe it makes sense to sever the extortion out.

17         MR. ROSEN: Can I just say a few words in response?
18  If this alleged extortion is so vital to the U.S. Bridge
19  counts, why isn't Mr. Garafola in the U.S. Bridge securities
20  frauds, conspiracy to commit securities frauds, money
21  laundering of U.S. Bridge funds if it is so vital. It is not
22  vital. The IPO was out already. I mean, in other words, if
23  Mr. Garafola went out and stole a car to get to this meeting,
24  is that part of the conspiracy. If he's vital, he would be in
25  the enterprise, he would be in the RICO.

HOLLY DRISCOLL, CSR          OFFICIAL COURT REPORTER

15

1      This is a discrete and separate situation, Judge
2  Glasser, that will cause Mr. Garafola to sit there for weeks,
3  months of securities money laundering transactions having
4  nothing, nothing to do with him and, most respectfully, and
5  I'm not one to point fingers and I'm not, the indictment does
6  describe, it does allege A, B and C and D are alleged
7  organized crime figures enlisted to protect and promote this
8  fraud.  Mr. Garafola is not named.  Mr. Corngold left out a
9  name.  He mentioned a bunch of names, you notice he did not
10  name Mr. Garafola as being someone allegedly brought in to the
11  enterprise for the muscle, no.  So, the indictment doesn't
12  even put him into this and I think that the prejudice is so
13  severe and so overwhelming in a case such as this that we meet
14  all the criteria for the Court to exercise its discretion and
15  sever Mr. Garafola.

16      MR. CORNGOLD:  Judge, I didn't talk about the Ray
17  aspect of the motions, I don't know if the Court wants me to
18  now or not.

19      THE COURT:  I'll hear Mr. Roth first.  I would note,
20  however, that in paragraph ten of the indictment which is
21  captioned The Enterprise Mr. Garafola is not mentioned as one
22  of the --

23      MR. CORNGOLD:  That's correct and Mr. Rosen is
24  correct that the government doesn't allege that Mr. Garafola
25  is one of the alleged organized crime people who are

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

16

1   protecting the enterprise.  The indictment alleges essentially
2   that Mr. Garafola was acting on behalf of Mr. Polito, the
3   owner of U.S. Bridge of New York, one of the manipulated
4   stocks and that that's the role that he played.  So there's no
5   dispute that Mr. Garafola -- Mr. Garafola clearly is not
6   alleged to be a member of the RICO enterprise, he's not in the
7   substantive or the RICO conspiracy charge but the Court is
8   familiar with the numerous cases, some of which we cited, that
9   hold that you don't have to be a charged RICO defendant to be
10  properly joined or to be properly tried under Rule 14 and I
11  think that the Scarpa case is a good example of that.

12          MR. ROSEN:  Okay -- I don't want to say anymore.

13          THE COURT:  Before we leave this I was curious about
14  your footnote ten which refers to the Casamento case on page
15  36 of your memorandum.

16          MR. CORNGOLD:  Yes.

17          THE COURT:  Is there anything that has occurred since
18  you prepared this memorandum which would make that footnote of
19  more than passing relevance at this stage so far as the
20  severance motion is concerned?

21          MR. CORNGOLD:  I think I described another point in
22  the memorandum, the ongoing plea negotiations.  I can
23  represent to the Court that the government has -- three
24  defendants have pleaded guilty, one is scheduled to plead
25  guilty next week.  The government has agreements in principle

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

17

1   with six other defendants and we're working out the details of
2   the plea agreement.  We anticipate though, of course,
3   defendants -- I mean the negotiations may not go exactly the
4   way that the government anticipates but it's my firm
5   anticipation that by the end of February there will be between
6   six and nine defendants who are left in the indictment and
7   because of that that obviously meets the Casamento numbers but
8   I can't say today that if we're ten or under.

9          THE COURT:  What effect would all that have upon an
10  informed determination of these motions to sever?

11         MR. CORNGOLD:  Well --

12         THE COURT:  The question, Mr. Corngold, is if these
13  prospective developments would have more than passing
14  relevance to this severance motion, then it might be prudent
15  for the Court to defer making a determination with respect to
16  those severance motions.

17         MR. CORNGOLD:  That's what I was going to propose,
18  Your Honor.  The Court has been very indulgent with all the
19  parties in this case.  What I believe is -- I will represent
20  that by the end of February, beginning of March the government
21  will have finished its plea negotiations and what I would
22  propose is a time in mid-March, early to mid-March by which
23  the Court could rule on the severance motions as a whole and
24  also set a trial date.  I would suggest though I do believe
25  that and we have to get to the Shvarts issue that may have

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

18

1    something to do with the scheduling.

2          THE COURT:  Well, my concern is also I think it is

3    Section 3161, maybe subdivision (j), somewhere around that, it

4    is part of the Speedy Trial Act which I think imposes some

5    limitation upon the determination of motions and I think it

6    might be that withholding a determination until some time in

7    mid-March may collide with, I think it is (j).

8          MR. CORNGOLD:  Yes.

9          THE COURT:  The thought just occurs to me as I'm

10   discussing this with you, I may be wrong about the letter.

11         MR. CORNGOLD:  I believe, Your Honor, that the

12   provision provides 30 days after the motion is completely

13   briefed and argued though not -- it's really been a long time

14   since I've looked at it, but not as a requirement but as a

15   presumption.

16         THE COURT:  Okay.

17         MR. CORNGOLD:  And I think that given the reasons

18   that I've described it makes sense under the (h)(8) provision

19   for the Court to -- I'm bad with the letters.

20         THE COURT:  It is (h)(8)(A) I think but I'm just

21   raising that because I was curious about that footnote, it may

22   be that all of this would be academic, I may be able to decide

23   it without even considering Casamento.

24         Insofar as the severance motion -- the suppression

25   motion, it may be that I issued that order, Mr. Rosen, I

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

19

1   generally do as a matter of course with respect to suppression
2   motions but I will tell you now that I will deny it primarily
3   on the basis of United States versus Gilette and also because
4   I think the bases upon which you make that motion are so
5   purely speculative that I don't think a suppression hearing is
6   warranted.   I'll deny that motion.

7            MR. ROSEN:   Thank you.

8            THE COURT:   Mr. Ray, insofar as your severance motion
9   is concerned, that's been submitted, I'll deal with that.

10           MR. SMITH:   Your Honor, David Smith on behalf of
11  Rocco Basile.   Your Honor, given the posture that Mr. Basile
12  is in, as I explained to Your Honor before, I would ask that
13  we be excused.   These matters are no longer relevant to him
14  assuming he is pleading guilty on Wednesday.

15           THE COURT:   I think that's correct.

16           MR. CORNGOLD:   Yes, I agree.

17           THE COURT:   By all means.

18      Mr. Roth.

19           MR. ROTH:   Thank you.   Your Honor, in terms of the
20  severance motion, I adopt many of the arguments that Mr. Rosen
21  has made.   I think if there are two defendants in this case
22  that most warrant a severance, they are undoubtedly the two
23  defendants that are not charged in the RICO count.   There are
24  19 defendants here, 17 charged with RICO, the only two that
25  are not are Mr. Rosen's client and my client, Mr. Ray.   And I

20

1  think Mr. Rosen is also correct that my client and Mr. Rosen's
2  client warrant a severance from one another because of the
3  unique circumstances that these defendants find themselves.

4       Your Honor, you can tell from my papers that my
5  client is uniquely situated here.  He not only cooperated with
6  the FBI for a very extensive period of time on all sorts of
7  matters but also cooperated with the FBI in this particular
8  case against at least one defendant who will be sitting in the
9  courtroom with him, Mr. Garafola.  As a matter of fact, at one
10  point and I think it was in 1996 the government engineered a
11  meeting between my client and Mr. Garafola that was at the
12  behest of the FBI, it was covered by the FBI, it wasn't
13  recorded apparently but that meeting exists.

14       Now, the only reason that my client cooperated at all
15  was because at some point in 1996 the FBI came to my client
16  and made certain allegations about threats that were being
17  made on his life, so at that point he was in a very, very
18  difficult position and more out of self-preservation than
19  anything else he decided to cooperate with the FBI and did so
20  including in this case.

21       And we've also interposed a public authority defense
22  here and I've served a notice on the government of that.  Your
23  Honor, my concern with respect to Mr. Ray outside of the
24  obvious, his unique circumstances, is the fact that even if
25  all of the pleas that Mr. Corngold conjures here, even if they

HOLLY DRISCOLL, CSR       OFFICIAL COURT REPORTER

21

1  all occur, this is going to be a very, very lengthy trial,
2  literally months I would imagine because we're talking about
3  not only a RICO conspiracy and an enterprise but we're talking
4  about four or five or six different conspiracies, we're
5  talking about four different securities conspiracies, an
6  extortion conspiracy, a money laundering conspiracy and, quite
7  frankly, Mr. Ray in essence is involved in none of them.  I
8  know he's alleged to be part of the U.S. Bridge conspiracy but
9  the U.S. Bridge conspiracy at its core is a stock manipulation
10  scheme.  My client had nothing to do with stock manipulation,
11  he had nothing to do with U.S. Bridge.  He was sought out by
12  U.S. Bridge as an intermediary to go to a bonding company to
13  get a bond and the allegation is that he was given money and
14  that my client got money and in turn was supposed to bribe
15  somebody in the bonding company.  That is very, very
16  attenuated from that securities fraud scheme that he's charged
17  with.  Just like the extortion conspiracy that Mr. Garafola is
18  involved in, in my view, is very, very, very attenuated.

19        My concern is that we're going to be sitting here
20  and, by the way, about a month and a half ago I called
21  Mr. Corngold and asked him the same question that Your Honor
22  did, how many defendants do we have left in this thing, I'm
23  making a severance motion, how is this sorting out and he told
24  me, well, I think a month and a half ago, we've got three
25  pleas.  Well, a month and a half later we have three pleas.  I

Case 1:12-mc-00150-ILG  Document 74-8  Filed 10/23/12  Page 23 of 30 PageID #: 724
RJN 00 000123 102212
Case 1:04-cv-00013-ILG  Document 1-3  Filed 01/06/04  Page 23 of 30 PageID #: 73

22

1  know he's very optimistic about all of this happening but
2  there's a good possibility I believe, he's been trying to get
3  these pleas for ten months, this has been going on since March
4  of the year 2000 and up to this point in ten months he's come
5  up with three pleas.  This may well be a case where we end up
6  with 14 or 15 defendants in this case and we might have a four
7  month trial and the evidence against Mr. Ray, if Your Honor
8  severed Mr. Ray, could be introduced in a three or four day
9  period.  He is involved in one transaction, a series of about
10  two, maybe three at the most meetings that all occurred in
11  1995.  There are a number of witnesses that the government
12  would put on, it could all be done in two or three, maybe four
13  or five days at the most.  I would like not to be in a
14  situation where we're sitting here month after month after
15  month where his name is not mentioned and that's going to
16  happen because he's not involved in any of these sophisticated
17  manipulation schemes, he's not involved in any money
18  laundering schemes, any offshore accounts or anything.  He's
19  involved in a very finite, very discrete transaction which
20  could be handled with a minimum number of witnesses and the
21  entire picture could be developed within a week.

22  So, for that reason, Your Honor, even if there are
23  pleas in the case, I believe he should be severed plus we have
24  the public authority defense which, quite frankly, involves my
25  client and no one else.  We're going to be off on a frolic of

HOLLY DRISCOLL, CSR      OFFICIAL COURT REPORTER

23

1  our own in this case, Your Honor, if Your Honor permits the
2  evidence which is going to require me to call a number of the
3  FBI agents as hostile witnesses who supervised my client and
4  who made certain promises and guarantees to him.  That's
5  something that has nothing to do with anybody else in this
6  courtroom.  And, by the way, Your Honor, in order for us to
7  develop his defense of public authority, we're going to have
8  to develop why he became an informant in the first place and
9  that, unfortunately, is going to reflect very negatively on
10  Mr. Rosen's client, I think it is unavoidable and I think
11  it's, you know, I'm not here preaching on Mr. Rosen's client's
12  behalf, Mr. Rosen can do that better than I, but it does
13  impact on his client in a very, very negative way and I don't
14  see how the two of them could possibly be tried together
15  provided Your Honor permits the public authority defense which
16  I think, quite frankly, Your Honor, is inevitable here.

17          MR. CORNGOLD:  See, I've had many conversations with
18  Mr. Roth about this public authority defense and I still have
19  to say, respectfully, that I just don't see, I don't see how
20  it can stand.  The conduct that Mr. Ray is alleged to have
21  engaged in in this indictment is in 1995.  At best what
22  Mr. Roth has is that some time after all that conduct was done
23  in 1996 Mr. Ray got hearsay information that there may be a
24  contract out about him by Mr. Garafola and as a result, he
25  decided to cooperate.  There's no -- I guess I just don't see

HOLLY DRISCOLL, CSR      OFFICIAL COURT REPORTER

24

1    how his decision to cooperate in '96 or his attempts to
2    cooperate or his alleged attempts to cooperate in 1996 can
3    somehow retroactively affect whether he did the conduct in '95
4    or not.  So, with all respect, as I said, the government will
5    move to preclude this public authority defense and I truly
6    don't see how it can possibly be relevant.

7            So, what the unique circumstances are here, even if
8    somehow Mr. -- this hearsay information that there's a threat
9    one year after the fact on Mr. Ray's life somehow came in, as
10   far as I can see, it would be admissible evidence against
11   both -- against Mr. Garafola, to go back to Mr. Garafola's
12   severance motion, if Mr. Garafola is making threats a year
13   later because of a deal gone bad because of relating to the
14   extortion, it is relevant evidence.  So, if it's admissible,
15   it is relevant both for the case against Mr. Garafola and the
16   case against Mr. Ray.  Zafiro makes clear that the idea of a
17   severance because evidence is going to be introduced is only
18   applicable if the evidence is going to be introduced against
19   one defendant that's inadmissible against another defendant.
20   Neither Mr. Garafola nor Mr. Ray have made any argument that
21   this evidence would be admissible for one case but not
22   admissible for the other case but, frankly, I don't see how
23   that evidence could ever come in to begin with.  So, I just
24   don't see how this after the fact cooperation is relevant to
25   the case.  I don't see how this threat evidence is relevant

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

Case 1:12-mc-00150-ILG  Document 74-8  Filed 10/23/12  Page 26 of 30 PageID #: 727
RJN 00 000126 102212
Case 1:04-cv-00013-ILG  Document 1-3  Filed 01/06/04  Page 26 of 30 PageID #: 76

25

1   only for one defendant and not for another defendant.  If it
2   is somehow relevant or his attempts to cooperate, it is really
3   a garden variety situation which happens all the time where
4   defendants seek to cooperate after the fact, maybe make
5   proffer statements and then for whatever reason decide not to
6   cooperate and go to trial.  There's nothing unusual about that
7   here.

8        THE COURT:  Mr. Roth, if what I'm hearing from
9   Mr. Corngold is correct that the public authority basis or
10  defense basis is predicated upon conduct which comes after the
11  conduct which is alleged in this indictment, then how would
12  that be at all relevant if it were offered and if a motion in
13  limine were to be made, I'm not deciding it now, it hasn't
14  been made, but for purposes of your argument, what would the
15  relevance of that evidence be?

16       MR. ROTH:  Well, Judge, let me just add a few facts
17  which I think are relevant and which I alluded to in my papers
18  but I neglected to add orally.  My client did not start
19  cooperating until 1996.  After he did cooperate he was fully
20  debriefed about everything that happened in 1995 by the FBI on
21  numerous occasions.

22       THE COURT:  This was in 1996?

23       MR. ROTH:  In 1996.  He was told by the FBI that if
24  he continued to cooperate and his cooperation was extensive
25  after 1996 and did include matters within this indictment, he

26

1   was told that he would not only not be prosecuted, he wouldn't
2   have to testify.  That promise I would suggest by the FBI is
3   highly relevant on a public authority defense and he
4   cooperated with the express promise by the FBI that if he did
5   so and, in fact, was under the impression that he was risking
6   his life while he was doing it, he wouldn't be prosecuted on
7   this case.  The FBI and the United States Attorney's Office
8   then reneged on that promise and, therefore, he was indicted I
9   guess in 2000 and he finds himself here today.

10           His cooperation was very extensive in this case.
11  Mr. Corngold tries to create the impression that by the time
12  he cooperated this case was over.  That's not true.  He met
13  with Mr. Garafola in this case surveilled by the FBI in this
14  case.  He went to Russia on behalf of the FBI in this case to
15  bring Mr. Felix Sater, an unindicted co-conspirator and
16  cooperator with the government, an individual who is going to
17  testify, he went to Russia at the behest of the FBI to bring
18  him back to the United States.  Now, the FBI has conveniently
19  lost all records.  I've requested in discovery pursuant to
20  Rule 16 all records of his cooperation, 302s.  They don't have
21  anything but his cooperation did exist, we can prove it
22  independently and he was promised a walk on this case which he
23  did not get.

24           THE COURT:  Mr. Roth, I'm just thinking aloud, if
25  what you say is correct, is there some basis for a motion by

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

27

1   you to dismiss the indictment against Mr. Ray by way of

2   enforcing a promise which you believe you can establish or by

3   way of enforcing a promise that he would not be called as a

4   witness?

5           MR. ROTH:  I mean I already know what the

6   government's answer is, Your Honor; their response is he

7   didn't tell them the truth, therefore, he violated the

8   agreement, therefore, he was prosecuted.

9           THE COURT:  Well, I don't know what the government's

10  answer is, all I know is what I'm hearing hear from you,

11  Mr. Roth, but I have a recollection going back nearly twenty

12  years, it was the first major criminal case that I had, it was

13  the Cunningham case, president of the union and two

14  co-defendants and as I recall it, there was a gentleman whose

15  name I can't remember who was promised by the government that

16  in the event he provided information, he would not be called

17  as a witness and then was subpoenaed and a motion was made to

18  quash the subpoena which was argued rather vigorously and I

19  granted that motion having found that there was such a promise

20  which causes me to think that if everything you say is true

21  and there was some agreement, maybe you have some remedy with

22  respect to that.

23           MR. ROTH:  Judge, I will concede --

24           THE COURT:  It might be worth testing.

25           MR. ROTH:  I will concede two things, Your Honor;

28

 1   number one, that agreement was obviously not in writing or I'd
 2   be in a position --
 3              THE COURT:  It is not a statute of frauds problem.
 4              MR. ROTH:  And number two, the United States
 5   Attorney's Office clearly at the time it was made was not a
 6   party to that promise.  So, I hear what Your Honor is saying
 7   and perhaps I'll supplement my pretrial motions if Your Honor
 8   would permit.
 9              THE COURT:  What you're saying, Mr. Roth, reflects
10   rather seriously and badly upon a government agency, I mean I
11   hear this very frequently from defense counsel that the
12   government is acting in a rather unlawful, venal, dishonest
13   corrupt way, that argument is almost standard in many cases
14   which I hear by defense counsel and if there is some merit to
15   that, then perhaps the Court ought to be given an opportunity
16   to determine whether there is or isn't some merit to that.
17   But, in any event, if there's nothing else that you want to
18   add, I'll permit Mr. Corngold.
19              MR. CORNGOLD:  If I could just say three things about
20   what Mr. Roth said.  First, the converse of what the Court is
21   saying which I think is clear is that even if there is a
22   motion to be made to compel the enforcement of a contract or
23   having to do with the government's misbehavior here, that's
24   just not jury evidence, that's not a jury question, it is a
25   court question and it goes -- it doesn't go at all to the

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER

29

1  issue of guilt or innocence in this case.

2        THE COURT:  Well, it's not a question of guilt or
3  innocence, we're dealing with a severance motion.

4        MR. CORNGOLD:  That's correct though it is also tied
5  in to the discovery motion and it is relevant to the severance
6  motion because the premise of the motion or part of the
7  premise of the motion is there's going to be all of this ugly
8  evidence introduced that only relates to Mr. Ray that arguably
9  is damaging to Mr. Garafola and it's our position simply that
10  this evidence is just not admissible evidence in a trial,
11  either a joint trial or a severed trial.  I just want to say
12  two other things, I think we've said in the papers but just to
13  make it clear, it is simply not true that the government sent
14  Mr. Ray to Russia to bring Mr. Sater back and it is simply not
15  true that the government conveniently lost all the records.
16  The government has disclosed to Mr. Roth all the relevant 302s
17  that have to do with debriefings that occurred in this '96
18  period about these matters and it's just important I think for
19  the government to say that those two statements are just not
20  true.

21        THE COURT:  Okay.  Anything else?

22        MR. ROTH:  Thank you, Judge, no, nothing.

23        THE COURT:  That motion is submitted.  I think that's
24  the only motion you made.

25        MR. ROTH:  No, that's not true, Your Honor, I have a

HOLLY DRISCOLL, CSR        OFFICIAL COURT REPORTER