UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

IN RE THE UNSEALING OF 98-CR-1101          No. 12-MC-150
U.S. v. FELIX SATER aka "JOHN DOE"

-----------------------------------------------------------X

## JOINT MOTION FOR RECONSIDERATION OF THAT CERTAIN ILLEGALLY CONCEALED ORDER OF MARCH 15, 2013

**FREDERICK M. OBERLANDER**
**THE LAW OFFICE OF FREDERICK M. OBERLANDER, PC**
Post Office Box 1870
28 Sycamore Lane
Telephone:   (212) 826-0357
Facsimile:    (212) 202-7624
Email:        fred55@aol.com

Attorney for movant
**Lorienton Palmer**

Attorney for non-movant parties in interest for whom he properly exercises *jus tertii* standing pursuant to 18 U.S.C. §3771(d) and common law
**The Estate of Ernest Gottdiener**
**The Estate of Judit Gottdiener**
**Ervin Tausky**
**Suan Investments**


**RICHARD E. LERNER**
**THE LAW OFFICE OF RICHARD E. LERNER, PC**
255 West 36th Street
New York, NY 10018
Telephone:   (917) 584-4864
Email:        richardlerner@msn.com

Attorney for movant
Frederick M. Oberlander

## PRELIMINARY STATEMENT

This is a motion for reconsideration, for reconsideration of that certain order of this court, docketed March 15, 2013 as entry 221, whereby this court represents to have disposed of many of the issues raised in movants' motions to unseal the docket and the contents of all documents which were, or should have been, entered upon or referenced by said docket, to the extent, if any, any such were ever lawfully sealed, and for the restoration to the public of such documents which were, or should have been, entered upon or referenced by said docket but were not and were not legally sealed (and thus were illegally hidden), if any, as the case may be.

## BACKGROUND ARGUMENT

### A SEALING ORDER MUST SATISFY THE SAME SUBSTANTIVE AND PROCEDURAL REQUIREMENTS AS ANY ORDER OR IT IS *PRO TANTO BRUTUM FULMEN*

Court orders are legal nullities freely ignored unless they satisfy constitutional, common law, and statutory or quasi-statutory (e.g., the FRCP) requirements. Accordingly, this motion is bifurcated into argument as to the decision to retain under actual sealing order those things which are and have been under actual sealing order and argument as to the decision to retain otherwise "sealed" (read: illegally hidden) those things which are and have been illegally hidden.

Semble that any order intended actually to be legally operative as an order, whereby we mean a directive of this (or any) court issued pursuant to its Article III equity jurisdiction as established by Congress (or, though not relevant here, and solely in the case of the U.S. Supreme Court sitting in original jurisdiction pursuant to its equity jurisdiction as provided therein) the violation of which may subject the violator to the consequences of contempt or it is void.

Semble that to satisfy Fifth Amendment due process any order must be expressed by

decretal language capable of clear and unambiguous determination, without reference to anything beyond the four corners of the document expressing it, as to what it is that must be done or what it is that must not be done or it is void.

Semble that any order other than an admiralty order *in rem* against a salvage must be *in personam*, enjoining not the thing from being done but the person from doing it, or it is void.

Semble that any order against any person must have been issued by a court with both equity <u>and</u> *in personam* jurisdiction over the person and the subject enjoined, and must have provided notice and procedural due process to him before issuance, or it is void.

Semble that any order must satisfy FRCP 58 (the signed separate writing rule), FRCP 65 (as to injunctions and restraining orders), and FRCP 79 (docketing), or it is void.

**A SEALING ORDER MUST SATISFY THE SAME
SUBSTANTIVE AND PROCEDURAL REQUIREMENTS AS
ANY ORDER OR IT IS *UNCONSTSITUTIONAL***

Besides being void (or, equivalently, illegal, *ulta vires*, etc.) as set forth above, orders may be unconstitutional.

In the context of this motion, we are concerned with two forms of orders, those which purport to restrict access and those which purport restrict speech. Put simply, a sealing order to the extent it purports to restrict access to a judicial (or any filed) document by someone who doesn't already have it does exactly that, it restricts *access*. That same order, however, to the extent it purports to restrict someone who already has access from disseminating it is a prior restraint, period, as is any order restricting *speech*.

*Syllogistically as per the above, the only way to tell which an order is, that is, whether an order, is to examine its decretal language. Period.*

Access. Orders purporting to restrict *access* to documents filed in a court, through the court, for example by accessing such through PACER or physically at the courthouse, must meet constitutional or common law standards or they are unconstitutional (that is, for documents filed in a court to which there is not a presumptive First Amendment right of access, but a common law right of access, such right is still founded in the constitutionally sanctioned existence of the court in the first place, the common law sobriquet more accurately referred to as a right of access inherent in the court's Article III existence as opposed to a right of access inherent in the First Amendment, so ultimately all rights of access are grounded in the constitution, we merely formally now to remedy the metaphysical inadequacy of expression, for example in the *Amodeo* cases, to note that the right of access is always constitutional, but it may be direct (First Amendment) or derivative (Article III), the latter the "public's historical right" equivalent of the "court's historical right" to administer its own proceedings in a circumscribed universe at all times subject to overriding Congressional will, itself limited by separation of powers where Congress would otherwise by legislation improperly legislate the outcome of a particular case).

Somewhat reluctantly and definitely heroically, we assume familiarity with (1) *direct* constitutionally requisite standards, *viz.* as to documents to which there is a First Amendment right of access (which in this circuit includes transcripts and similar documents in respect of proceedings to which there is a First Amendment right of access), access may only be restricted after publicly noticed hearings at which clear and convincing evidentiary findings are made that a constitutionally cognizable overriding interest in question cannot be protected by less restrictive means than any restriction applied, expressed on a record capable of appellate review; and (2) *derivative* common law constitutionally requisite standards, substantially the same except the that balancing is applied on a sliding scale depending on the importance of the document.

4

Finally, there *statutory* rights of access. For example, the Crime Victims' Rights Act ("CVRA") has been held by the D.C. federal district court to provide a separate statutory right of access to documents independent of constitutional rights (for complete exegesis, obviously this right too is derivatively constitutional insofar as it springs from Congress's Article III powers).

<u>Speech</u>. Familiarity is assumed here as well. Any order restraining speech is by definition a prior restraint. Period. The degree of constitutional protection enjoyed by the speech at issue generally depends upon its content, on a sliding scale from "core" protected speech, such as speech revealing crime or matters of public concern, which enjoys ultimate protection and restraint of which is subject to strict scrutiny; to speech which "merely proposes a commercial transaction," and restraint of which is subject to intermediate scrutiny; to speech which has no protection and restraint of which subject to no significant scrutiny *per se*. We do not address so-called time place and manner restriction, as we are concerned here with content based restriction only, and thus by definition to the extent not covered by time place and manner restriction any restriction which purports to be content neutral is not covered by this writing because by definition we are concerned with sealing in the access and speech contexts and sealing can only occur, per the above, upon content-based analysis.

Having said that, discussion must be made of the intellectually dishonest EDNY history of attempting to restrain the speech of the "little people" who don't buy ink by the barrel, most infamously in the context of *Zyprexa*, where a district judge thought he could justify ordering the return of documents dropped in the laps of innocent third parties on a content neutral basis because they had been originally obtained from discovery as opposed to anywhere else. Curiously, he didn't think it appropriate to restrain a web site (perhaps because the web site had powerful attorneys from a public interest group) and even the party requesting the injunction

knew better than to request enjoining the *New York Times*, even though its employee admittedly was responsible for the dissemination in the first place.

We said intellectually dishonest because it is intellectually dishonest. It's worse than that too, but it's that at least if we credit that court with knowing the law, for in *Zyprexa* the court distinguished the doctors and other medical experts, who even that court admitted wrote articles and books on psychotropics, who found the documents mailed to them without solicitation, from the *New York Times* on the ground that "they weren't the organized media."

For emphasis, that court distinguished the case from *Procter & Gamble*, where the 6th Circuit held that *BusinessWeek* could not be enjoined from publishing a sealed complaint given it by a party's lawyer notwithstanding the *Rhinehart* doctrine[1] on the same basis, that *BusinessWeek* was "the media."

So please be assured, that we call this intellectual dishonesty is a kindness and not at all intended to be derogatory. Were we to call it (merely) *error*, we would be insinuating that the respected jurist was ignorant of 200 years in which the Supreme Court has never even suggested there was any difference in First Amendment rights of free expression between the organized media and the lonely pamphleteer, a principle most recently affirmed in *Citizens United*. *That* would be an insult. No, we assume the court knew perfectly well what was the law and what it was doing and made a bet that the individuals whose civil rights it was violating wouldn't, or couldn't, pay to appeal. *That's* intellectual dishonesty. Or judicial hubris. Either works.

Finally, in keeping with the theme of completeness of exegesis, we make mention of the

---

[1] So named after *Seattle Times*, wherein the Supreme Court held that the dissemination by a *party* of documents obtained in discovery by compulsion was not subject to strict scrutiny – but as the Court later made clear in oral argument in *Bartnicki* was still subject to First Amendment protection. Note that of course this distinction was affirmed in *Butterworth v. Smith*, in which the Supreme Court held 9-0 that information known by and obtained by a party outside the use of court process was never subject to restraint except for normal strict scrutiny standards notwithstanding it was conveyed in court in grand jury testimony.

right to petition in this context. As petitions are presumably always made by speech, necessarily the right to petition incorporates some right to speak. But, as Justice Scalia has noted, *Duryea v. Guarneri*, we do not assume that the Framers were troublemakers with too much time on their hands and so wrote into the First Amendment three separate subordinate clauses prohibiting interference with rights to (1) speech; (2) petition; and (3) assembly even though they meant the scopes of protection to be idempotently co-extensive. As he wrote:

> The complexity of treating the Petition Clause and Speech Clause separately is attributable to the inconsiderate disregard for judicial convenience displayed by those who ratified a First Amendment that included both provisions as separate constitutional rights. A plaintiff does not engage in pernicious "circumvention" of our Speech Clause precedents when he brings a claim premised on a separate enumerated right to which those precedents are inapplicable.
>
> Accordingly, there should be no doctrinal distinction between them unless the history or tradition of the Petition Clause justifies it. The mere fact that the Court can enumerate several historical petitions of public importance, ante, at 14– 16, does not establish such a tradition, given that petitions for redress of private grievances vastly outnumbered them.
>
> It is the Constitution that establishes constitutional rights, not the Justices' notions of what is important, or the top numbers on their Petition Hit Parade. And there is no basis for believing that the Petition Clause gives special protection to public petitions.

In other words, the *right to petition* encompasses a right to speak which is *broader* than the right would be if analyzed under the freedom of expression clause because there is no distinction between a petition for private gain and a petition for public good, that is, the right to speak in petition is identical whether the petition is brought as a private grievance to sue in law for money or a public action to sue in equity for some form of benefit to the common weal.

We mention this because it is predictable that the government, and if not Mr. Sater's lawyers, will once again write some drivel that because Mr. Oberlander is a lawyer, he has less First Amendment rights than anyone else, or because this case started with a private lawsuit it's not constitutionally "important." *Fail on that*. And for what it's worth, movant Palmer is a lawyer, too, does that mean he has fewer rights of *access* than the general public?

7

**FOREGROUND ARGUMENT**

**UNFINISHED BUSINESS**

(1) STOP HIDING SATER

The originating petition(s) in this proceeding requested that 98-CR-1101 be properly captioned as it had been before someone ordered it changed in or about August 2010. Regardless of such, we respectfully demand the case be captioned as *United States v. Felix Sater* so that, *inter alia*, he doesn't again defraud banks and condominium buyers of staggering sums by hiding his conviction. And we request the court see to it that it is properly indexed on PACER.

(2) TELL THE TRUTH ABOUT THE PROFFER AND COOPERATION

The court knows perfectly well and has so admitted that proffer agreements are never filed with courts and were not filed in Sater's case 98-CR-1101 and so never could have been sealed. The same as to cooperation agreements in Sater's case. Indeed the originating motion papers by order to show cause admit they were never sealed, obviously for this reason. See 98-CR-1101 document 51 affidavit of Moore item 6.

We respectfully request the court so publicly acknowledge, so we may seek appropriate civil, administrative, and other sanctions against those who have said otherwise in any forum, representing that the proffer and cooperation were ever under seal, starting with Mr. Kaminsky and Sater's counsel, to the extent they have ever been cognizably distinct in this action.

Of course, in the alternative, the court may state *on the record in public* that they *were* filed and thus sealed (assuming one believes in the operable legality of blanket orders, let alone those that don't actually exist in requisite form). In that case kindly so state and state the docket numbers of each and the dates times when they were entered into court and docket them.

(3) PUT ON THE DOCKET ALL THAT SHOULD BE THERE AND UNSEAL IT

In or about September 2012 the Hon. Brian Cogan transferred civil contempt proceedings from 98-CR-1101 to 12-MC-557. By subsequent order, see docket entry on 557 for 10/18/2012, Judge Cogan stated that all filings prior to that transfer were subject to *this* court's unsealing.

> ORDER in response to [54] letter from Mr. Oberlander dated October 2, 2012 requesting clarification. **The Court recognizes that certain contempt-related documents were appropriately filed on 98-cr-1101, because they were filed on that docket prior to this Court's Order instructing the parties to file contempt documents on the 12-mc-557 dockets. The Court also recognizes that to the extent that documents or entries were made on both 98-cr-1101 and 12-mc-557, Judge Glasser's decision as to which filings should be unsealed in 98-cr-1101 shall determine which filings should be unsealed in 12-mc-557**. Ordered by Judge Brian M. Cogan on 10/18/2012. (Siegfried, Evan)

We respectfully request all such undocketed, let alone "sealed," filings made on 1101 be immediately docket and unsealed, or hearings held as to why they should not be unsealed (but no matter what they are to be docketed). *Any filing properly made on this docket which is not now publicly reflected on this docket is a fraud on the public and our clients*. Nor will the public or our clients be subject to judicial finger pointing. This court started all this when it illegally hid a felony conviction and this court owns all this, *at least* to the extent Judge Cogan said so. Please ensure everything (if there is anything) relating to Persico and everything (if there is anything) relating to real or alleged attempts by counsel to contract for a mob hit on Sater are included.

(4) RULE ON THE ISSUE OF BLANKET SEALING

The originating petition(s) in this proceeding requested that the court rule that its blanket sealing order (for this section of necessity we have to pretend[2] there was such an order and that it

---

[2] There was no such order. There are no implied orders. It was fraud. We will not be played and because we press the point be said to have conceded there was any order. We merely say that as the court seems to think there was, implied into existence or necessarily existing because a court supernumerary scribbled "case sealed" somewhere (but see below for analysis of the illegality of presuming any order is valid that can't be seen given the burden of proof is on the party who would maintain the sealing which must presuppose that the party must first prove there was sealing, rather than "sealing," i.e. illegal falsification of a docket by unlawful hiding of documents, the court must address the issue of its legality and constitutionality and act on that part of the originating motion before it.

was otherwise but for its blanket nature legal or it makes no sense, though the court is free to rule there never was such an order *qua* order, and so is not addressing this issue as to do so in that case would be merely advisory), the one actually never written but this court believes in some way to have been implied into operative existence without those pesky procedural and substantive requirements set forth above, is and was *ab initio* unconstitutional *per se* or void for reasons well argued therein but not addressed by this court.

(5) RULE ON THE ISSUE OF THREAT

As it is time the issue got to the Supreme Court, we assert that it is unconstitutional to consider any threat, real or imagined, to the safety of Sater (or any other defendant) with respect to sealing any documents, at the least, as is the case here, after conviction has become final. We assert it is not the Article III function of a court to protect cooperators. It is the function of the executive. We assert that *U.S. v. Doe*, the 1995 2nd Circuit case around which too many judges in the district seems to have built a cottage industry of sealing whatever the government or cooperator wants on the mere "possibility" of a threat is unconstitutional *per se*. Alternatively, we assert if it is not unconstitutional *per se*, it is unconstitutional unless there is actual threat that is imminent, and calamitous, satisfying *Brandenburg*, *New York Times*, and *Near*, not possibility.

We intend civil and criminal charges against those responsible for what is almost surely a conspiracy to falsify the record by introduction into evidence of a fabricated threat against. Sater. We are clear here. This is an accusation that based on information we have and demand be heard in evidence, including by testimony, Sater, Lauria, Sater's lawyers, and others known to the court have conspired to defraud, provide false statements, and committed other related crimes in fabricating grounds to "paint the tape" by making it appear there was a credible threat.

(7) RESTORE THE PERMISSIBLE PSR CONTENTS NOW UNLAWFULLY REDACTED

On application therefor, and by orders, the United States Supreme Court has allowed Mr. Oberlander to make public now and forever many of the statements in the PSR which he felt compelled public disclosure. The full list of these statements contained in the PSR and now a matter of public record in the redacted cert petition which will be filed subsequently in companion to a request for judicial notice of a Supreme Court filing today. The Supreme Court having spoken, and these statements public, sealing the equivalents of them in any documents anywhere is unlawful.

(6) WE DEMAND EVERYTHING BE UNSEALED

First, in that the blanket sealing order never existed, or if it did was *per se* void or unconstitutional, nothing ever was sealed, just unlawfully hidden, and so may not remain sealed. As to this court's assertion that some scribble somewhere by some judicial supernumerary that in 1998 said "case sealed" there is no other conclusion possible than that this court made the requisite findings under *Herald*, including on prior public notice, etc. to justify a blanket sealing, or any sealing, order, well, no. Fail on that.

As this court itself correctly stated in the August 2012 unsealing hearings as to the docket, the burden of proof in an unsealing case rests on the proponent of continued sealing, in this case the government and Sater. It should be self evident, and we so assert it is the law, that must include proving the existence, validity, and constitutionality of the original sealing order itself, and you don't prove something exists because of a scribble, let alone adjudicate matters of constitutional dimension. Ever. As the documents cannot be proved ever to have been lawfully sealed all that followed thereafter is fraud on the public as you cannot maintain what never was

and everything was by law filed in public when filed on that docket given the court's own choice not to "bother" with individual determinations and orders. Period.

Second, in that the court has admitted to the Supreme Court in a filing made by the Solicitor General intended to influence the court in its Article III function that Sater was sentenced in open court and that full details of his cooperation were therein read aloud, there is no lawful basis on which to thereafter "maintain" any seal that ever lawfully or constitutionally existed as to anything, anywhere, including the details of his cooperation, as they became public property at that time and must remain so thereafter.

(7) WE DEMAND EVERYTHING BE UNSEALED THAT WE HAVE SEEN

Many of the documents to be "maintained" under seal are documents we the undersigned have ourselves written, or have been served with or otherwise seen. To the extent any continued actually lawful sealing would restrain our dissemination thereof in any way, and thus be a prior restraint on us, we demand the immediate unsealing thereof insofar as the process of this court in determining this issue woefully fails to pass constitutional muster.

First of all, the *Rhinehart* doctrine has never been applied outside the discovery context. Neither was *Zyprexa*, intellectual fraud though it was. Here we are talking not about discovery production not yet made into judicial documents or even evidence on which trials were conducted, which was the case in *Seattle Times*, we are talking of judicial and other documents introduced into court in proceedings in which we were parties or counsel to parties and as even *Seattle Times* applied intermediate scrutiny and again only in the discovery pre-admission context, we are entitled to, we assert first, plenary First Amendment adversarial due process, pursuant to *Princess Anne (aka Carroll)*, participation in all decisions, including to introduce

evidence whether or not any evidence introduced by the government or Sater be kept from us, and as we were under protest denied this right and even threatened with sanctions for attempting to partially assert it by request for judicial notice, the entire proceeding as to these documents fails utterly. Therefore we demand the unsealing of all that we have. In the alternative we demand complete rehearing as to all such documents wherein we are afforded full plenary due process adversarial rights.

(7) WE DEMAND THE PRODUCTION OF DECRETAL LANGUAGE

Upon the persuasive authority of the Honorable Justice Arthur D. Spatt's recent decision and order in *Dorsett v. County of Nassau*, 10-cv-1258 (docket entry 198, entered November 26, 2012, and published in the New York Law Journal on December 12, 2012), we demand the court issue formal decretal language for any purported continuing sealing, that – as Judge Spatt has just done in the *Dorsett* case – so too should this court make clear that any such sealing order must be narrowly construed, and modified as necessary, to make clear that it could only have been binding upon court personnel and those who were parties to the proceeding when the order was issued, and could only apply to documents and information obtained "solely" as a result of judicial process. Judge Spatt agreed that an order restricting use of material obtained independently of the judicial process could not be restrained. "[W]hat is crucial in the instant motion is that the Court is only restricting the County officials' use of the IAU Report if the sole avenue through which they viewed the Report was a result of the judicial processes in this case." (Nov. 26th decision, p. 36). "Certainly, if these non-parties obtain a copy of the Report from a means independent of the court's processes, or if they acquired information contained in the Report from an alternate source, there would be no restrictions to the use of that information."

13

(Nov. 26th decision, p. 36).3

That is, to the extent that any such alleged "sealing" order issued herein by your honor in 1998 inadvertently purported to restrain the dissemination of documents or information obtained outside of court process, and to the extent that any such "sealing" order purported to restrain the free speech rights of "any" or "all" persons who might come into possession of any particular documents or information, this court should make clear, just as Judge Spatt has just done, that any such order was only binding upon the parties to the action and only to the extent that the documents and information at issue were obtained through court process. Moreover, if the alleged "sealing" order was also an injunction, we submit that, in reconstructing the order, the court must assure its compliance with Rule 65(d) of the Federal Rules of Civil Procedure.

In *Dorsett v. County of Nassau*, a protective order was issued on January 14, 2011, restricting access to a certain "Internal Affairs Unit," or "IAU," report prepared by the Nassau County Police Department. Subsequently a further confidentiality order was issued on December 15, 2011, was entered to expand access to the Nassau County legislators and their counsel, for the sole purpose of facilitating the settlement. The plaintiff opposed the issuance of those orders, arguing that the public had a right to learn of the contents of the IAU report.

---

[3] As stated elsewhere in Judge Spatt's decision, "if County officials … even obtain a copy of the Report itself through a method outside of this litigation, *the Court cannot control the exchange of that information nor does it attempt to do so*. …[T]he Court is restricting information which came into certain individuals' possession *only as a direct result of the court's processes*. See *Int'l Prods. Corp. v. Koons*, 325 F.2d 403, 407-08 (2d Cir. 1963) ("we entertain no doubt as to the constitutionality of a rule allowing a federal court to forbid the publicizing, in advance of trial, of information obtained by one party from another *by use of the court's processes*…. we have no question as to the court's jurisdiction to do this under the inherent 'equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices'.")" Nov. 26th decision, p. 43 (emphasis added).

14

Notwithstanding having lost twice, the plaintiff filed a new motion, seeking "to lift all bands and restrictions pertaining to the Protective Order." Additionally, the media moved to intervene, seeking vacatur of the confidentiality order." Although, Judge Spatt denied the substantive relief sought, his honor deemed it necessary to clarify that the order could not restrain the dissemination of the documents or the information therein, to the extent that such were obtained outside of court process. And although Judge Spatt denied the plaintiff's motion, he deemed the motion entirely appropriate, and *commendable*: "The motivation behind the Plaintiff's relentlessness concerning the IAU Report appears to the Court to be entirely commendable." (See decision and order, p. 24, emphasis added). We trust that this court will, likewise, deem non-party movant Oberlander's relentless efforts herein to bring the illegal sentence of "John Doe," and all the facts related thereto, to the attention of the public and Congress to be equally commendable, if not more so, given the threats to which he has been subjected. Whereas in Dorsett, the plaintiff wished to bring to the attention of the public misconduct by the Nassau County Police Force, the movant herein wishes to bring to light matters of most grave – misconduct by federal prosecutors and judges.

Notwithstanding that Judge Spatt denied the motion to allow the dissemination of the IAU report that was obtained through court process, his honor deemed it necessary to modify his prior order, to eliminate any possible unconstitutional ambiguity: "It appears that certain language contained in the Confidentiality Order," Judge Spatt acknowledged, "may be ambiguous and has caused some confusion as to the breadth of the restrictions in place." Judge Spatt therefore modified the order, inserting the italicized words, to make clear that so long as documents or information contained therein were obtained outside of court process, they could not be subject to any judicial restriction on their dissemination. The confidentiality order was

15

modified, the italicized words having been added by Judge Spatt, so that the order would comport with constitutional requirements: (See pp. 36-38 of Nov. 26th decision)

> IT IS HEREBY ORDERED, as follows:
>
> 1. For purposes of this Order, documents and information considered to be confidential (the "Confidential Material"), includes only the Nassau County Police Department's Internal Affairs Unit Report number 14-2009 pertaining to police response to domestic incidents involving Jo'Anna Bird and Leonardo Valdez-Cruz (the "IAU Report"), and all documents attached thereto and made a part thereof.
>
> 2. As set forth herein, Confidential Material, *if viewed or obtained solely as a result of this litigation*, shall be used solely for purposes of this Action and shall not be used for any other purpose without leave of the above-named Court on notice to opposing counsel.
>
> 3. Notwithstanding the parameters of the protective order (DE 60 and DE 110) the Confidential Material may be disclosed, summarized, described, characterized or otherwise communicated or made available in whole or in part only to members of the currently-sitting Nassau County Legislature and their in-house counsel for the sole purpose of deliberating the issue of approval of the Settlement Agreement and Release.
>
> 4. Review of the Confidential Material by members of the Nassau County Legislature and/or their in-house counsel, *if done so as a result of this litigation*, must be conducted in the presence of a designated member(s) of the Nassau County Police Department, the Nassau County Attorney or designated Deputy County Attorney(ies). No person given access to the Confidential Material or information contained therein shall be given possession of same, nor may they copy, duplicate, photograph, record, transcribe (or have transcribed), take notes, or in any way memorialize the contents of the Confidential Material.
>
> 5. Any conversation, discussion, deliberation, communication regarding, or mention of, the Confidential Material shall be done in Executive Session and, under no circumstances shall same be communicated, disseminated, released, or disclosed to members of the public, the media or anyone other than duly-elected members of the Nassau County Legislature and their in-house counsel. Moreover, all Executive Sessions are to take place in a location where same cannot be overheard and shall not be recorded in any fashion. The terms of the reviewing process set forth herein are supplemented by Exhibit C, attached hereto. *These restrictions*

*only apply if the Confidential Material is viewed or obtained solely as a result of this litigation.*

6. Every person given access to the Confidential Material or information contained therein *as a result of this litigation* shall be advised in writing and agree in writing in the form attached hereto as Exhibits A and B, to be bound by the terms and conditions of this Order, consenting to the jurisdiction of this Court for purposes of enforcement of the terms of this Order, and agreeing not to disclose or use any Confidential Material for purposes other than those permitted herein.

7. Every person given access to the Confidential Material *as a result of this litigation* acknowledges to be subject to contempt of court and/or other sanctions for non-compliance with this Order.

8. The terms and conditions of this Order shall, subject to further Court Order, govern the use of Confidential Material viewed or obtained *as a result of this litigation* and shall continue to be binding throughout and after the conclusion of this Action and any appeals.

9. In the event of a breach or violation of any term or condition of this Order, the County Defendants shall have the right to seek enforcement of the terms hereof and the imposition of any other appropriate remedy including, but not limited to, sanctions and contempt.

10. If any person receiving Confidential Material is subpoenaed in any other action or proceeding or is serviced with a subpoena or document demand that seeks Confidential Material, he shall give prompt written notice by hand within twenty-four (24) hours of receipt of such subpoena or document demand, to the other parties to this Order. Any party hereto may seek judicial relief from such subpoena or document demand. Compliance with any order directing production of any Confidential Material pursuant to the subpoena shall not constitute a violation of this Order.

11. No other aspect of the prior protective orders (DE 60 and DE 110) shall be impacted or altered by this Order.

We submit that Judge Spatt's emendation of the order to make clear that no one who might obtain the IAU report outside of court process, or any information contained therein, could be restrained from disseminating the decision of November 26th comports with well-settled law, whether analyzed under First Amendment law, under FRCP Rule 65(d), or under

17

long-standing jurisprudence interpreting the equity jurisdiction of the federal courts. In short, a federal court has no business restraining documents or information obtained outside of court process (unless, of course, the party sought to be restrained is afforded First Amendment due process, and the information to be restrained is enjoinable – and please remember that the U.S. Supreme Court has never, ever upheld a prior restraint on speech).

Judge Spatt well understood that to issue a gag order, "an exacting showing of harm" must be shown. Judge Spatt acknowledged that the original Rule 26 protective order was not a "gag" order, because it did not preclude the plaintiff from discussing her case or the IAU report in public, if she obtained that information from a source other than civil discovery in this case. Citing Seattle Times Co. v. Rhinehart, 467 U.S. 20 (1984), Judge Spatt noted that a where a Rule 26 (c) protective order is entered on a showing of good cause, is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information if gained from other sources, it does not offend the First Amendment. (Nov. 26th decision, p. 20). Thus, to the extent that the IAU report, or information therein, was obtained from sources other than pre-trial discovery, it could not ever be gagged. Hence, the emendation of the order to make clear that only documents or information obtained solely as a result of the discovery process could be subject to a protective order. Judge Spatt recognized that, to the extent the order might be interpreted as a gag on dissemination of a document or information obtained outside of court process, "then every day the order stands would impose a continued denial of the public's right to receive timely information on governmental affairs." (Nov. 26th decision, p. 32). In so stating, Judge Spatt cited the same legal principles that have been repeatedly been brought to the

attention of this court in these proceedings for the past two and a half years.4 Recognizing the unconstitutionally chilling effect of an order purporting to enjoin dissemination of documents or information obtained other than from judicial process, Judge Spatt stated that such implication in the order was due to inadvertence:

> "The Press Intervenors are correct that the Confidentiality Order, prior to the modifications reflected above, *arguably placed limits on speech regardless of the source of the information being shared*. Paragraph One stated: "For purposes of this Order, documents and information considered to be confidential (the "Confidential Material"), regardless by whom produced, includes only the Nassau County Police Department's Internal Affairs Unit Report number 14-2009 pertaining to police response to domestic incidents involving Jo'Anna Bird and Leonardo Valdez-Cruz (the "IAU Report"), and all documents attached thereto and made a part thereof." Thus, they are correct that this clause poses serious concerns as to the meaning of the Order. *This language appears to have been approved by the Court inadvertently….*
>
> Nov. 26th decision, p. 39 (emphasis added).

## Conclusion

Wherefore, it is respectfully requested that the within motion be granted in all respects.

Dated: April 19, 2013
      New York, New York

/s/ Frederick M. Oberlander
/s/ Richard E. Lerner

---

[4] In this regard, Judge Spatt cited the following cases, as annotated by his honor. *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 560-61 (1976) ("Delays imposed by governmental authority" are inconsistent with the press' "traditional function of bringing news to the public promptly."); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) ("loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); *Hirschkop v. Snead*, 594 F.2d 356, 373 (4th Cir. 1979) ("the first amendment protects not only the content of speech but also its timeliness").

19