# THE LAW OFFICE OF RICHARD E. LERNER, P.C.

Richard E. Lerner, Esq.
255 West 36th Street, Suite 401
New York, New York 10018
(917) 584-4864
Fax: (347) 824-2006
richardlerner@msn.com

May 15, 2013

Hon. I. Leo Glasser
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**TRANSMITTED BY FAX NOT ECF SO THE COURT MAY CONFIRM THE ENTIRETY OF ITS CONTENTS IS PUBLIC PROPERTY AND MUST BE PUBLICLY UPLOADED WITHOUT REDACTION IMMEDIATELY
FAX TO 718-613-2446**

**Request For Emergency Prerogative *Quo Warranto*
Relief From Prior Restraint With Respect To the Order
Docketed On March 13, 2013 (Docket No. 105)**

**That This Court Show Cause By What Authority It Believes, If It
Believes, It Has Lawfully Concealed Said Judicial Document From
the Public and Enjoined Its Dissemination by Those Who Have It**

Dear Judge Glasser:

We write in receipt of a May 8, 2013 letter from the U.S. Supreme Court requiring we seek clarification from your honor with respect to the March 13, 2013 order on docket 12-MC-150 (no. 105) which the Supreme Court calls "apparently" sealed. The letter triggers a jurisdictional fifteen days therefrom to obtain clarification. We seek emergency relief from a certain portion of the March 13th Order insofar as it unlawfully (ultra vires) or invalidly (unconstitutionally) bears the legend "FILED UNDER SEAL."

It is manifestly unlawful and unconstitutional insofar as:

(i) There is no procedurally valid antecedent sealing order, nor even a *post hoc* sealing order. Thus it is not "sealed" – rather, it is "concealed."

(ii) It is outside the jurisdiction of this court, regardless of procedure, to enjoin, conceal, hide, or otherwise restrict dissemination of, or access to, information that was revealed in open court. Any recitation in that order as to what occurred in open court cannot lawfully be sealed.

(iii) There was no requisite procedural due process prior to its issuance. That is, to the extent that anyone might claim that placing the words "filed under seal" on an order may constitute a prior restraint gag order, we note that prior to its issuance the court did not give notice and an opportunity to be heard, and most important...

1

(iv) The court failed to make the requisite findings, capable of appellate review, showing the need for sealing the entire order.

First Amendment due process requires that this request be taken up immediately. *Lugosch v. Pyramid* Co., 435 F. 3d 110, 126 (2d Cir. 2006) ("We take this opportunity to emphasize that the district court must make its findings quickly.")[1] The order can not lawfully be kept under seal; at the very minimum, a redacted version must be made public forthwith.[2]

## *With respect to the unlawfulness of the order, please consider:*

ONE. There is no blanket sealing order on the 12-mc-150 docket (or the 98-cr-1101 docket). We cannot be forced to "imply" one into existence and imagine its validity. The 12-mc-150 docket is in no respect "sealed."

TWO. Any order of any kind purporting to use the Article III power of this court to enjoin anyone from doing anything – whether to enjoin the clerk of the court from allowing public access to that document or to enjoin us or any party or privy from disseminating it on any theory – *must actually exist*. Every order must be docketed. Every order must be in a separate writing (or, at the least, read aloud in open court before the persons enjoined, then transcribed with subsequent docketing and separate writing). Under FRCP 65, any injunctive order must have decretal language that makes clear on its face what must not be done or must be done and who it commands. And any injunctive order must state clearly on its face exactly why it has been issued and for what reason.

In the case of an order sealing a judicial document, the order must satisfy First Amendment requirements – notice, hearing, and due process – insofar as it operates as a restraint on someone who has it. So too, a judicial document as to which there is a qualified First Amendment right of access, or as to which there is a common-law right of access and it is dispositive of the case or controversy. *Amodeo II, Lugosch v. Pyramid.*

With respect to the March 13th Order, there has not been compliance with such First Amendment and common-law requirements. Scrawling the words "under seal" on a document does not imply a gag order into existence, or even a *proper* – i.e., lawful and constitutional – sealing order into existence. See FRCP 65(d).

---

[1] Your honor may be familiar with Judge Weinstein's very recent order of May "unsealing" order with respect to a sentencing memorandum issued in the matter of *U.S. v. Shirley Huntley*, 13-cr-54 (Docket No. 21). The memorandum, filed on May 2nd; members of the media moved to unseal it on May 3rd; on May 7th (just two business days later), Judge Weinstein issued a well-reasoned decision and order unsealing the memorandum, save for some apparently non-newsworthy matters. That is, Judge Weinstein issued a ruling expeditiously, as the Constitution requires. We would most humbly expect your honor to also abide by the Constitution, and rule on this application forthwith, in a well-reasoned decision, in the event any portion of the order is retained under seal.

[2] To the extent that the order may discuss the nature of Mr. Sater's cooperation with the government, this has never been the concern of Mr. Oberlander or his clients. In any event, Mr. Sater's co-conspirator Salvatore Lauria has already published an entire book that discusses Mr. Sater's cooperation at great length. Therefore, it is hard to imagine what basis there could be for maintaining anything in that order under seal.

2

THREE. What happens in open court is public property. Dissemination of such information cannot lawfully be enjoined, nor the record of its existence concealed. *Craig v. Harney*, 331 U.S. 367 (1947). So, assume for sake of analysis that at Mr. Sater's sentencing, XYZ information was revealed. Clearly, such XYZ information, merely by the court having placing it in an order bearing the words "filed under seal," cannot actually have sealed, much less gagged, such information. And to the extent that the court (or the U.S. Attorney) might threaten to prosecute someone who would thereafter state XYZ in public, merely because the words "under seal" were placed on the order, any such threat itself would be unconstitutional.[3]

FOUR. Mr. Sater was sentenced in open court; so, if for example the "XYZ" information concerned the public sentencing of Mr. Sater, it cannot possibly be illegal to tell anyone that Mr. Sater was sentenced in open court, particularly since (a) sentencing him in open court was not only required by statute, it was (b) required that every one of his federally protected crime victims be personally and directly told of the sentencing in advance; and (c) it was required that the rest of the world be told as well.

### *With respect to the transparent invalidity of the order, please consider:*

ONE. The March 13th Order was not served on the undersigned or Mr. Oberlander. Indeed, as far the Assistant United States Attorney is concerned, we should have never learned of the March 13th Order at all; apparently, it was intended to be filed secretly *ex parte* at the U.S. Supreme Court by the Solicitor General (who, it would appear, deemed it unlawful, or at the least unethical and deceitful, to submit papers to the U.S. Supreme Court in secret).[4] In light of the representation by Assistant U.S. Attorney

---

[3] Please note, in response to a congressional inquiry, Mr. Oberlander and I are providing information regarding the *Felix Sater* matter, the MVRA and CVRA violations therein, and related issues, to the staff counsel investigators of a congressional committee at their request. Accordingly, we remind this court, the government and Mr. Sater of 18 U.S.C. § 1505, which provides, in pertinent part: "Whoever corruptly ... or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede ... the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress—[¶] Shall be fined under this title, imprisoned not more than 5 years ...." In no circumstances may the court issue an order purporting, or apply an existing order as, to bar or penalize the dissemination of the March 13th Order to Congress, in response to its investigation, and if the court, the government or Mr. Sater's counsel believes it appropriate to threaten contempt for responding to such inquiry, we ask that such be put in writing forthwith, so that we may provide it to Congress along with our written submission.

[4] In an extraordinary email dated March 27, 2013, Mr. Kaminsky wrote: "During a telephone call with Mr. Oberlander, I was informed that during the litigation over your petition for certiorari, the Solicitor General's Office inadvertently sent you a sealed, ex parte document issued by The Honorable I. Leo Glasser on March 13, 2013. As discussed, this document was sent to you in error and was not intended to be viewed by you, as Mr. Oberlander readily conceded that he understood during the telephone call. We request that you return the document, and any copies thereof, to the United States Attorney's Office for the Eastern District of New York (attn: Todd Kaminsky) as soon as possible." On March 27th we challenged the Assistant United States Attorney to produce a sealing order, and have not received one.

There will be no "return" of the order. It is not the property of the government. The government doesn't issue court orders. And Assistant U.S. attorneys do not speak for the Solicitor General; he can do so for himself. The Solicitor General sent the March 13th Order to us two times, by mail and email. It could not

3

Kaminsky that there was some arrangement by which your honor's order was intended to be kept secret, we demand an explanation of the agreement made with the government and Mr. Sater's counsel and the reasons therefor.[5]

TWO. At sentencing, Mr. Sater revealed his past commission of apparently years of financial institution fraud; he acknowledged that the hiding of his conviction allowed him to borrow money from banks, which he never could have done had the banks known of his $40 million RICO conviction.

This court has formally recognized and informed the United States Supreme Court that Mr. Sater was sentenced in open court. That is a "judicial" admission that the court defied 18 USC §3553 (which requires the reading aloud of a statement of reasons if no or partial order of restitution is given), and that it defied 18 USC §3771 (which requires that the court ensure that the government notify Mr. Sater's victims in advance of the sentencing, so that they may be afforded the opportunity to be heard).

The court's failure to follow the law entitles Mr. Sater's victims, including those we represent, to demand that Mr. Sater be resentenced.[6] "Notwithstanding any law to the contrary," imposition of restitution is mandatory, and Ninth Circuit federal appellate precedent allows a demand for resentencing even "simply" for the court's failure to allow victims to be heard. Therefore, besides lacking the legal authority, i.e. equity jurisdiction, to override it by any court order *de jure* or *de facto*, your honor cannot constitutionally prohibit anyone from telling the victims information that would allow them to obtain restitution or any other right, including by resentencing, in no small part because your honor was required at the time to make sure that the government did. To the extent the March 13th Order contains information germane thereto which was made public at Mr. Sater's sentencing, dissemination of such information cannot be enjoined merely because the information may have been included in a later order that bore the words "filed under seal." Information made public at Mr. Sater's sentencing cannot be sealed, or embargoed. This court knows the principle: "The genie is out of the bottle; the cat is out of the bag."

*Then there is the interest in knowing not only did Mr. Sater get sentenced in public, but he there admitted a pattern of financial institution fraud and on top of that made it obvious that he had a deal, or he thought he did, for his entire conviction to be concealed forever, as he expressed upset at the sentencing that* The New York Times *had "outed" him and banks now suspected the truth. That is fascinating and disturbing and ought to be to quite a few people, including said banks and their stockholders, some of which Mr. Oberlander's clients derivatively represent. Anyone who thought he was due for imminent public sentencing and thereafter open court record would not be*

---

have been an error, and – in any event – if he did so in error, it constitutes an accidental disclosure by the government and may be freely disseminated, as it is highly newsworthy. See *Florida Star v. BJF*.

[5] As Judge Weinstein stated in the aforementioned order (see fn.1), "Particularly important is transparency in our judicial branch. Its power depends upon the people's confidence. That confidence is founded on the fact that the material judges rely on for decision is available to the public -- decisions by which judges' work is judged." Demand is made for explication of the reasons for the agreement with the government and Mr. Sater's counsel, so the public may properly judge your honor, or at least the Department of Justice.

[6] An application for the resentencing of Mr. Sater will soon be made.

*surprised banks were figuring out they had been defrauded as he would know that day was coming. To call the fact this happened in open court and was then concealed a matter of public concern is to put it mildly, particularly as Mr. Sater 's lawyers, Kelly Moore and Leslie Caldwell, former federal RICO prosecutors, were standing there listening to him admit he operated Bayrock through a pattern of bank fraud and didn't care, suggesting either they really didn't at all like him or that they presumed this would all be thereafter, and forever, concealed even though taking place in open court.*

THREE. We respectfully decline to divine the interpretation of orders. If the decretal language is unclear, the order is illegal, void for vagueness. Obviously, language that does not exist is unclear. However, if there were decretal "sealing" language in the order, it could (by direction to the court clerk) facially purport to either bar public access to a document. Or, if it contains proper decretal language, it could facially purport to bar a party or his privy from dissemination of the document *if obtained through court process or collateral thereto*. Nonetheless, if such an order even existed, and purported to bar dissemination, it would be a prior restraint on speech. There is, however, no appellate precedent anywhere that says a court can issue such an order in invisible ink, *ex parte*, without a record statement of reasons, let alone without procedural First Amendment due process. We cannot be forced to imply into existence what – if it existed in fact – would have come into existence by unlawful, indeed nonexistent, process and thus be, again, illegal, and transparently invalid on account of such procedural failure.

We request immediate clarification and pronouncement that this court has not issued any kind of prior restraint gag order in 12-mc-150, and thus the March 13, 2013 may be discussed publicly, as well as in our petition for rehearing that has been submitted to the U.S. Supreme Court. At the very least, this court should issue a redacted version of the order forthwith, with a constitutionally sufficient explanation for every redaction. Otherwise we request immediate compliance with First Amendment prior restraint procedural and substantive due process within 48 hours.

We reserve the right to supplement this, and invite the media, members of the public, and Mr. Sater's many victims to join this application. I believe it would be up to AUSA Miller to ensure that victim notice takes place. He was at the sentencing too so certainly knows and will concur on the record it was open court, so this would be a good opportunity for him to enforce the CVRA, on himself too. Again the issue immediately present because of the time constraints of the United States Supreme Court is that particular admission of the open court sentencing ***and the reading aloud therein of details of his cooperation***, so this is without limitation to our right to object subsequently to any concealment or injunction against dissemination of the rest of the document,

Respectfully submitted,

THE LAW OFFICE OF RICHARD E. LERNER, P.C.

/s/ Richard E. Lerner

cc: All counsel, via email

5